926 P.2d 1310

STATE of Idaho, Plaintiff–Respondent,

v.

Douglas C. ETHERINGTON, Defendant–Appellant.

No. 22145.

Court of Appeals of Idaho.

Oct. 8, 1996.

Petition for Review Oct. 29, 1996.

Review Denied Dec. 6, 1996.

**464**

Bruce H. Greene, Sandpoint, for appellant.

Alan G. Lance, Attorney General; John C. McKinney, Deputy Attorney General, argued, Boise, for respondent.

WALTERS, Chief Judge.

Douglas C. Etherington was convicted of misdemeanor driving while under the influence of alcohol. I.C. § 18–8004. He has appealed from the district court's decision upholding a magistrate's order denying Etherington's motion to suppress evidence. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 1994, at approximately 3:00 a.m., the Boundary County Sheriff's Office received a telephone call from a concerned citizen, who identified herself as Misty Reader and provided a telephone number where she could be reached. The caller reported that after hearing kids scream, she went outside of her residence in Moyie Springs, which is located north of Bonners Ferry, to determine what was taking place. A teenage boy told her that a man "from the bar" had pulled a gun on a group of teenage youths outside of her home. The caller said she had seen the suspect's vehicle and described it as a "copper-colored ... Toyota truck" with "brown stripes down the side" and "Montana license plates." She also described the driver as a man wearing a baseball cap, and explained that he was "slurring his words and staggering around with a gun." The caller further informed the dispatcher that after the incident, the driver "went around the block like he was going up the hill," and that he was "out here in Moyie somewhere or heading towards town."

The dispatcher relayed this information to officers in the area, including Boundary County Deputy Sheriff Russell Padgett and Bonners Ferry City Police Officer Rod McNair. Officer Padgett first saw Etherington's vehicle—a tan Ford truck—on U.S. Highway 95, south of Bonners Ferry. Etherington was headed south and Padgett was driving north. When Padgett turned around and caught up with the vehicle, Etherington had already been pulled over in Bonners Ferry by McNair. As a result of the stop, Etherington was charged with one count of misdemeanor driving while under the influence, I.C. § 18–8004.

Etherington filed a motion to suppress, asserting that the investigatory stop of his vehicle violated his state and federal constitutional rights to be free from unreasonable searches and seizures because McNair lacked a particularized and objective basis for making the investigative stop. He requested that all evidence gathered against him as a result of the stop be suppressed. The magistrate denied the motion. Etherington entered an I.C.R. 11(a)(2) conditional guilty plea, reserving his right to appeal from the denial of his motion to suppress. Judgment was entered but execution of that judgment was stayed pending appeal. After oral argument on appeal to the district court, the court affirmed the magistrate's denial of the motion. Etherington now appeals from the district court's order.

## II. STANDARD OF REVIEW

On an appeal from a decision of a magistrate following an appeal to the district judge sitting as an appellate court, the record is reviewed with due regard for, but independently from, the district court's decision. *State v. Kenner*, 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992); *State v. Donohoe*, 126 Idaho 989, 991, 895 P.2d 590, 592 (Ct. App.1995). This Court will uphold the findings of the magistrate court if the findings are supported by substantial and competent evidence. *McNelis v. McNelis*, 119 Idaho 349, 351, 806 P.2d 442, 444 (1991); *State v. Stevens*, 126 Idaho 822, 823, 892 P.2d 889, 890 (Ct.App.1995). However, issues of law are freely reviewed by this Court. *Stevens, supra.*

## III. DISCUSSION

Etherington claims that insufficient evidence was presented at the suppression hearing to justify the warrantless stop of his vehicle. He argues that a particularized and objective basis for the stop was lacking because: (1) the conduct took place in Moyie Springs and he was stopped in Bonners Ferry; (2) it was unknown where the purported assailant had driven to after the alleged incident; (3) the vehicle description was of a copper-colored Toyota truck, not of a tan Ford truck; (4) the caller stated that the truck had Montana license plates, but did not provide a license plate number; (5) no evidence was submitted indicating the time frame from receipt of the telephone call to the initiation of the investigatory stop of his vehicle; and (6) the vehicle was not being driven erratically, nor were there any other observable driving irregularities which would otherwise justify the stop. Etherington asserts that the totality of the circumstances in this case could not have provided the state with reasonable suspicion for the stop. He also argues that this type of random stop is prohibited by *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

When a violation of a constitutional right is asserted through a motion to suppress, the proper appellate response is one of deference to the trial court's factual findings unless those findings are clearly erroneous. *State v. Peightal*, 122 Idaho 5, 7, 830 P.2d 516, 518 (1992); *State v. Knapp*, 120 Idaho 343, 346, 815 P.2d 1083, 1086 (Ct.App.1991). However, the appellate court exercises free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *Id.*

When a police officer conducts a *Terry* stop (*see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), the investigatory seizure or stop must be justified by a reasonable, articulable suspicion on the part of the police that the person to be seized or stopped has committed or is about to commit a crime. *State v. Rawlings*, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992); *State v. Fry*, 122 Idaho 100, 103, 831 P.2d 942, 945 (Ct. App.1991); *State v. Knapp*, 120 Idaho 343, 347, 815 P.2d 1083, 1087 (Ct.App.1991). Whether the officer had the requisite reasonable suspicion to detain a citizen is determined on the basis of the totality of the circumstances. *Rawlings, supra; State v. Zubizareta*, 122 Idaho 823, 828, 839 P.2d 1237, 1242 (Ct.App.1992). Based upon the "whole picture," the detaining officer must have a particularized and objective basis for suspecting the person stopped of criminal activity. *Fry, supra.*

Here, McNair's sole reason for stopping Etherington was because of the report he had received from the dispatcher. The record shows that there was some deviation as to the description of the vehicle involved in the Moyie Springs incident. Padgett testified that the following information was radioed to him:

> I can't remember exactly what was said to me at the time, but, it was a—a report of a possibly intoxicated male subject driving a brown colored pickup, Toyota, Ford—it wasn't positive at the time, with a brown stripe. Uh, brandishing a firearm at several kids.

After spotting Etherington's pickup, Padgett turned his vehicle around and tried to catch the truck. However, by the time Padgett caught up with it, McNair had already stopped the pickup. McNair explained that the Bonners Ferry Police Department and the Boundary County Sheriff's Office share

the same radio frequency, and that he heard the following information over the radio:

A: I heard the dispatcher advise the county of the man with a gun in the Moyie Springs area.

Wilson [Counsel for the State]: Anything else you recall?

A: He was reportedly drunk and driving a small pickup.

Wilson: Alright. Was there any description given to you of the pickup?

A: I have in my report a small tan Ford.

Wilson: Alright. Okay. As a result of receiving that information, did—did you have any information of what the pickup was doing?

A: Not at that time, no, other than driving.

. . . .

Wilson: Alright. It didn't say where it was going.

A: He was supposedly coming on highway 2 probably toward town.

After receiving the report, McNair proceeded to the intersection of Highway 95 and Ada Street in Bonners Ferry in an attempt to intercept the vehicle if it came into town. McNair testified that he stopped the vehicle because it matched "basically the description I heard on the radio." He further stated that before stopping the vehicle, he saw no sign of intoxication or of any other criminal activity, and that the purpose of the stop was to "see if the subject had a weapon and if he was actually in a frame of mind to brandish it."

On cross-examination, McNair was questioned about the mention of a "small tan Ford" in his report, which had been completed after the stop and arrest:

Q: Now, you said in your report, it mentions a small tan Ford?

A: Right.

Q: That's not what the dispatcher told you to look for, is it?

A: I honestly don't know where the Ford came from but . . .

Q: Well, that was the vehicle you actually stopped, was it not?

A: That was.

Q: That's a tan Ford pickup.

A: That's correct.

The driver of the vehicle, which was a 1983 tan Ford pickup, was Etherington. There is no dispute that Etherington consented to a search of his person and of his vehicle. Police did not find a weapon, but asked Etherington to perform field sobriety tests. Etherington was then placed under arrest for driving while under the influence.

The magistrate provided the following explanation for denying the motion to suppress:

In ruling in this case, I would note that on May 7, [1994], at about three a.m., one identifying herself as Misty Reader, residing in Moyie Springs, called the Boundary County Sheriff's office. The voice of the person calling is obviously excited. She reported that a person pulled a gun. She described the vehicle as a copper colored Toyota, with Montana plates. This information, or some information was related to law enforcement, Russ Padgett and Rod McNair. Rod [McNair] believed that this may be the vehicle that was reported and he stopped the vehicle. Under the facts and circumstances here, I do not find this was an unreasonable police intrusion. I think it was a legitimate investigative stop and I would so find. I would, therefore, deny the motion to suppress. . . .

In *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the United States Supreme Court held, in part, that if a bulletin has been issued by a police department on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then objective reliance on that bulletin by officers of another police department justifies a stop by such other officers to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information. *See State v. Law*, 115 Idaho 769, 771, n. 2, 769 P.2d 1141, 1143, n. 2 (Ct.App.1989). *See also* 4 Wayne R. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.4(i) (1996); John F. Wagner, Jr., LAW ENFORCEMENT OFFICER'S AUTHORITY, UNDER FEDERAL CONSTITUTION'S FOURTH AMENDMENT, TO STOP AND BRIEFLY DETAIN, AND TO CONDUCT LIMITED PROTECTIVE SEARCH OF OR "FRISK," FOR INVESTIGATIVE PURPOSES, PERSON SUSPECTED OF CRIMINAL ACTIVITY-SUPREME COURT CASES, 104 L.Ed.2d 1046, 1055–56 (1991). Ethering-

ton contends that the vehicle description was erroneous and that the stop by McNair was unjustified. We disagree.

While the record reflects that there was a deviation from the informant's description of a copper-colored Toyota pickup with brown stripes on its sides and a Montana license plate to a tan Ford pickup with brown stripes down its sides with a Montana license plate, the deviation is not significant. The description is reasonably comparable to justify the stop based on reasonable and articulable suspicion. *See, e.g., State v. Kyles,* 221 Conn. 643, 607 A.2d 355 (1992) (stop of vehicle described as light yellow 1970's Cadillac was lawful even though vehicle stopped was actually light green because "under the Mercury vapor street lights the vehicle had more of a light yellow color"); *State v. Caples,* 236 Neb. 563, 462 N.W.2d 428 (1990) (dispatcher reported shots fired by "black male driving a gold-colored BMW;" stop was held lawful, though Caples claimed his BMW was silver, because of possibility that the car appeared gold or tan at night under street lights). Furthermore, because the informant reported that an intoxicated man with a gun had threatened some juveniles, a careful balancing of interests contemplated by *Terry* permits taking into account the hazards posed by a suspect with a gun. Under the circumstances in this case, we believe that McNair had a reasonable and articulable suspicion that Etherington's vehicle could have been involved in the incident which took place in Moyie Springs and, therefore, it was reasonable for him to conduct a *Terry* stop of the vehicle to question Etherington about the incident.

We hold that there was substantial and competent evidence to support the magistrate's findings based on the totality of the circumstances.

## IV. CONCLUSION

We affirm the magistrate's order denying Etherington's motion to suppress.

LANSING and PERRY, JJ., concur.