**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39618**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 376 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: February 27, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| AMY FAYE GRECO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Renae J. Hoff, District Judge.

Order granting motion to suppress, <u>reversed</u>; <u>case remanded</u> for further proceedings.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Sara B. Thomas, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for respondent. Diane M. Walker argued.

_____

PERRY, Judge Pro Tem

The State appeals from the district court's order granting Amy Faye Greco's motion to suppress evidence obtained through the execution of a search warrant. We reverse.

**I.**

**FACTS AND PROCEDURE**

Greco was charged with possession of a controlled substance, Idaho Code § 37-2732(c)(1), and injury to a child, I.C. § 18-1501(1). Prior to Greco's arrest, police officers obtained information from one of Greco's relatives regarding drug-related activities occurring in Greco's residence. Officers also obtained information from Greco's eleven-year-old son regarding his own drug activities inside the residence. Police officers went to Greco's residence and asked Greco if they could search her son's bedroom. Greco consented. Officers then asked if they could search the entire house. Greco told the officers that she needed to ask her grandmother for consent to search the house. Greco turned and walked inside the house and the

1

officers followed her. Once inside the house, Greco walked into her bedroom and closed the door. Officers then heard the sound of clanging glass and suspected that Greco was destroying evidence. The officers asked Greco to exit her bedroom, and she eventually complied. The officers then entered the bedroom and saw a security video camera monitor displaying the outside of the house.

The officers applied for a search warrant for the house. The magistrate issued a search warrant and the residence was searched. Officers found methamphetamine, marijuana, and drug paraphernalia.

Prior to trial, Greco moved the district court to suppress the evidence found during the execution of the search warrant, contending that there had been an unlawful, warrantless entry prior to obtaining the warrant. The district court granted the motion and suppressed the evidence. The State appeals.

## II.

## ANALYSIS

The State claims that police officers were allowed to enter the residence because Greco consented to the search of her son's bedroom. Further, the State argues that even if the evidence found as a result of the entrance were to be excluded from the search warrant application, the remaining evidence was sufficient to support a finding of probable cause. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

There were three searches in this case: (1) the initial entry into the residence; (2) the search of Greco's bedroom pursuant to the exigent circumstances exception to the warrant requirement; and (3) the search of the entire residence pursuant to the search warrant. The State contends that all three searches were lawful. The district court disagreed and found that the initial entry into the residence was unlawful because there was no consent to enter, that the

2

search of Greco's bedroom was unlawful because the officers relied on a police-created exigency, and that the search of the entire residence was unlawful because the search warrant lacked probable cause. For the following reasons, we conclude that all three searches were lawful.

## A.    Entry into the Residence

The State argues that Greco's consent to search her son's bedroom allowed officers to enter the house because "[a] typical, reasonable person would have understood that this would involve entry into the house." The district court found that because "neither [Greco] nor her grandmother consented to the search of the entire home," the entry was unlawful. Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

In this case, the district court found that Greco gave officers consent to search her son's bedroom. Greco did not revoke or limit the consent to search her son's bedroom. Nonetheless, Greco asserts that the scope of consent did not allow officers to enter the residence when she retreated back into the home. The district court found that when Greco retreated, "she neither verbally nor by gesture invited the officer to accompany her." The question before us, then, is whether it is reasonable for an officer to consider consent to search a bedroom to also include consent to enter the house. We determine that it is reasonable.

3

The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness, "what would the typical reasonable person have understood by the exchange between the officer and the suspect." *State v. Staatz*, 132 Idaho 693, 696, 978 P.2d 881, 884 (Ct. App. 1999) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). The record demonstrates that the son's room was located within the house. Therefore, in order to search his room, the officers would necessarily have to enter the house. It would be unreasonable for the officers to receive consent to search the bedroom, and then be required to receive separate consent to enter the house in order to carry out the search. There is no requirement for the officers to receive an "invitation" to enter after consent to search a part of the house is attained. Therefore, we determine that a reasonable person would have understood the consent to search the bedroom to also include consent to enter the house.

Greco asserts that the lack of consent to search the entire house precluded the officers from entering regardless of the previously granted consent to search the bedroom. Greco argues that our decision in *Abeyta* is persuasive on this point. In that case, police officers went to Abeyta's residence and spoke with him from the doorstep. During the course of the conversation, Abeyta left the doorstep and went inside. Once Abeyta turned his back and walked away from the door, the officers entered his home uninvited. We held that the initial entry into the house was without consent and was therefore an illegal entry. *Abeyta*, 131 Idaho at 707, 963 P.3d at 390. However, *Abeyta* is factually distinguishable from the instant case. In this case, the officers "unequivocally" received consent to search the son's bedroom. In *Abeyta*, the officers never received consent to search any portion of the house prior to their entry into the house. Since the issue in this case turns on the scope of consent rather than the lack of consent, we determine that *Abeyta* is not apposite.

## B. Exigent Circumstances

Once inside the residence, the State claims that exigent circumstances provided grounds for the officers to exceed the scope of the consent and make a limited entry into Greco's bedroom. The district court, having found the initial entry illegal, held that the officers "created the exigency by their uninvited entry" into the house, and therefore the exigent circumstances exception did not apply. "One well-recognized exception [to the warrant requirement] applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*,

4

____ U.S. ____, _____, 131 S.Ct. 1849, 1856 (2011).[1]  "The need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search." *Id*.; *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

In this case, we determine that it was reasonable for the officers to enter Greco's bedroom to ensure that evidence was not being destroyed.  First, we have already concluded that the officers entered the home lawfully.  Once inside, Greco displayed acts consistent with the acts of someone endeavoring to destroy evidence.  First, Greco immediately went inside her bedroom and closed the door instead of approaching her grandmother to ask if the officers could search the entire house.  Then, officers heard the sounds of clanging glass.  Finally, Greco initially did not comply with the officers' requests to come out of her bedroom.  It was objectively reasonable, based on Greco's acts, for the officers to conclude that evidence was being destroyed inside the bedroom.  Further, the officers' response was appropriately tailored to the scope of the exigency.  Therefore, the officers were justified in removing Greco from the bedroom and entering the room pursuant to the exigent circumstances exception.

## C.    Validity of Search Warrant

The State claims that even if the evidence of the security video camera monitor was excluded from the search warrant application, the application still "shows ample evidence to establish probable cause."  When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate had a substantial basis for concluding that probable cause existed.  *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983).  In this evaluation, great deference is paid to the magistrate's determination.  *Gates*, 462 U.S. at 236; *State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct. App. 1997).  The test for reviewing the magistrate's action is whether he or she abused his or her discretion in finding that probable cause existed.  *State v. Holman*, 109 Idaho 382, 387,

---

[1]     In *King*, the United States Supreme Court placed limitations on the police-created exigency doctrine.  The police-created exigency doctrine is an exception to exigent circumstances.  "Under this doctrine, police may not rely on the need to prevent destruction of evidence when that exigency was 'created' or 'manufactured' by the conduct of the police." *Kentucky v. King*, ____ U.S. _____, _____, 131 S.Ct. 1849, 1857 (2011).  In *King*, the Court held that "the exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment." *Id*. at _____, 131 S.Ct. at 1862.

707 P.2d 493, 498 (Ct. App. 1985). When a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid. *State v. Kelly*, 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct. App. 1984).

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 17, of the Idaho Constitution is virtually identical to the Fourth Amendment, except that "oath or affirmation" is termed "affidavit." In order for a search warrant to be valid, it must be supported by probable cause to believe that evidence or fruits of a crime may be found in a particular place. *Josephson*, 123 Idaho at 792-93, 852 P.2d at 1389-90. When determining whether probable cause exists:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238; *see also Wilson*, 130 Idaho at 215, 938 P.2d at 1253.

In this case, the officers applied for a search warrant following the entry into Greco's house and bedroom. The application was based on information obtained from Greco's relative, Greco's son, and through the officers' observations, including the observation that Greco had a security video camera monitor inside her bedroom. The district court found that:

> The remaining evidence is uncorroborated hearsay statements of [Greco's relative] and the defendant's son, neither were police informants so neither bear an indicia of reliability. The evidence obtained by law enforcement after the illegal entry should not have been considered by [the magistrate]. Therefore, the evidence discovered by law enforcement pursuant to the search warrant is hereby suppressed.

We disagree with the district court. We have held that:

> Unlike an anonymous tip, which alone and absent sufficient indicia of knowledge and veracity is insufficient to justify a stop, *State v. Etherington*, 129 Idaho 463, 465, 926 P.2d 1310, 1312 (Ct. App. 1996), an identified victim-witness' or concerned citizen's report to the police may be presumed reliable, such that the police are not required to establish either the credibility of the

6

> informant or the reliability of his information. *See State v. O'Bryan*, 96 Idaho 548, 552, 531 P.2d 1193, 1197 (1975). Where the information comes from a known citizen informant rather than an anonymous tipster, the citizen's disclosure of her identity, which carries the risk of accountability if the allegations turn out to be fabricated, is generally deemed adequate to show veracity and reliability. *State v. Larson*, 135 Idaho 99, 101, 15 P.3d 334, 336 (Ct. App. 2000).

*Wilson v. Idaho Transp. Dep't*, 136 Idaho 270, 274, 32 P.3d 164, 168 (Ct. App. 2001).

Here, police officers received information from Greco's relative, a known citizen. This relative identified himself to the officers by name, described that he was related to Greco, reported that he lived in Middleton, and explained that he and his wife were eyewitnesses to the activity in Greco's home. As a known citizen informant, this relative's information could be presumed to be reliable. Further, officers also received information from Greco's son. The son made statements against his own interest--that he committed a crime and that he had evidence of the crime in his bedroom. Further, the officers knew his name, his relationship to Greco, his address, and knew that he was an eyewitness. Therefore, the information from the son could also be presumed to be reliable. The application for the search warrant contained information from these reliable sources, specifically that: (1) Greco was likely stealing her grandmother's medication; (2) Greco had four to five friends enter her bedroom each night for around five minutes; (3) Greco installed a security camera monitoring system outside her house; and (4) Greco's son smoked marijuana and had drug paraphernalia in his bedroom. Additionally, police officers corroborated this information by observing different vehicles frequenting the house over the course of a week, receiving a report from the son's school principal indicating that the son was smoking marijuana, and receiving a report from another child that the son was threatening kids if they refused to smoke marijuana. This evidence created a fair probability that evidence of criminal activity was present in Greco's residence, both in her bedroom and in her son's bedroom. Therefore, it was appropriate for the magistrate to grant the application for the search warrant, even if the evidence discovered by the officers' presence inside the house prior to the application were to be stricken. Thus, the district court erred by suppressing the evidence obtained through the execution of the search warrant.

### III.
### CONCLUSION

The officers' initial entry into Greco's residence was lawful because Greco consented to the search of her son's bedroom. Also, the officers' search of Greco's bedroom was lawful pursuant to the exigency circumstances exception. Additionally, the magistrate had a substantial basis for finding probable cause to believe that there was a fair probability that drugs or evidence of that activity would be found at Greco's residence. Based on these conclusions, we reverse the district court's order suppressing evidence and remand for further proceedings.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**