963 P.2d 387

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Aristead J. ABEYTA, Defendant–Appellant.**

**No. 23537.**

Court of Appeals of Idaho.

July 2, 1998.

John M. Adams, Kootenai County Public Defender; J. Bradford Chapman, Deputy Public Defender, Coeur d'Alene, for Appellant. J. Bradford Chapman argued.

Alan G. Lance, Attorney General; Kevin J. Wladyka, Deputy Attorney General, Boise, for Respondent. Kevin J. Wladyka argued.

SCHWARTZMAN, Judge.

Aristead J. Abeyta appeals from the district court's denial of his motion to suppress all statements and evidence resulting from the illegal entry into his residence by police officers. For the reasons stated below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Coeur d'Alene police officers Darryl Cutler and Don Ashenbrenner were assigned to investigate an automobile burglary which resulted in the theft of stereo speakers and an amplifier. After being informed by a pawn shop owner that Abeyta had recently attempted to pawn a speaker and amplifier, the officers proceeded to Abeyta's home to investigate his possible involvement in the burglary.

When the plain-clothed officers arrived at Abeyta's residence, they knocked on the door. The events that followed are disputed. Officer Cutler testified that Abeyta answered the door, identified himself and then went to answer the telephone, leaving the officers standing on the front porch with the door open. Other witnesses testified that a friend of Abeyta's answered the door, shut it, and then went to find Abeyta. According to eyewitness testimony, Abeyta thereafter went to the door, talked to the officers for a few seconds, and then told them to hold on while he went to go get something.

The district court determined that after being left outside on the front doorstep, the officers entered Abeyta's residence without consent. Officer Cutler testified that he and Officer Ashenbrenner entered Abeyta's resi-

dence to "get out of the wind." Other witnesses testified that the officers entered Abeyta's residence, and then closed and locked the door behind them. After a momentary absence, Abeyta returned to the doorway area. At this point, the officers informed Abeyta that they were with the police department, that they had received information about some stolen items that he had attempted to pawn and that they believed he had these items at his residence. Officer Cutler testified that Abeyta then invited the officers further into the residence by asking them "Do you want to come in" or "Come in." Both the civilian eyewitnesses and Officer Cutler testified that the officers did nothing to indicate to Abeyta that he was in custody. No testimony or evidence was offered to indicate that Abeyta perceived himself to be in custody.

Subsequently, the officers questioned Abeyta about the amplifier and speaker, at which point Abeyta asked his guests to leave the residence. Following their departure, Abeyta admitted to having both the amplifier and speaker. At the request of the officers, Abeyta retrieved the items from a closet off the kitchen under Office Cutler's supervision. Cutler saw additional items in the closet that he believed may have also been stolen. The officers then asked Abeyta if he would consent to a search of his residence, informing him that if he did not sign the consent form, they would obtain a search warrant in order to conduct a search. After an initial refusal, Abeyta subsequently agreed and provided the officers with written consent. During the course of the search, the officers found and seized items believed to be connected to other burglaries.[1]

The officers next asked Abeyta to voluntarily accompany them to the police station. Abeyta's wife drove him to the police station where he waived his *Miranda* rights and confessed to taking the amplifier and speaker. Thereafter, Abeyta was charged by criminal complaint with one count of burglary, I.C. § 18–1401, and one count of grand theft, I.C. §§ 18–2403(1), 18–2407(1)(b).

---

1. With the exception of the speaker box and amplifier, the evidence seized as a result of the officers' search of Abeyta's home did not result in prosecution.

Counsel for Abeyta filed a motion to suppress all evidence obtained as a result of the officers' questioning, search and arrest of Abeyta, on the grounds that such evidence was obtained in violation of Abeyta's federal and state constitutional rights, his *Miranda* rights, and his statutory rights. The district court held a suppression hearing and denied Abeyta's motion, finding that although the officers' initial entry into Abeyta's home was illegal, the illegal entry was cured by his subsequent consent.

On August 23, 1996, Abeyta entered a conditional plea of guilty to burglary, I.C. § 18-1401, and grand theft, I.C. § 18-2407(1)(b), reserving the right to appeal the district court's denial of his motion to suppress. The district court withheld judgment and placed Abeyta on supervised probation for a five-year period. This appeal followed.

## II.

## ANALYSIS

### A. Unlawful Entry

While Abeyta does not challenge the district court's conclusion that the officers' initial entry into his residence was unlawful, the state asserts that the entry was lawful and challenges the district court's contrary conclusion.

The Fourth Amendment to the United States Constitution provides that the "[t]he right of the people to be secure in their ... houses, ... against unreasonable searches and seizures, shall not be violated ...." The essence of the Fourth Amendment is " 'the right of a man to retreat into his own home and there be free of unreasonable governmental intrusion.' " *U.S. v. Shaibu,* 920 F.2d 1423, 1425 (9th Cir.1990) (*quoting Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)). An officer's warrantless entry into a residence is presumptively unreasonable and prohibited by the Fourth Amendment. *Welsh v. Wisconsin,* 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *State v. Curl,* 125 Idaho 224, 225, 869 P.2d 224, 225 (1993). This presumption is strong and may be overcome only under limited, well-recognized excep-

tions, such as an entry based upon probable cause and exigent circumstances or consent. *Payton v. New York,* 445 U.S. 573, 589–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *State v. Yeates,* 112 Idaho 377, 380–81, 732 P.2d 346, 349–50 (Ct.App.1987)

Officers Cutler and Ashenbrenner went to Abeyta's residence and knocked on the door. Although it is not clear who initially answered the door, the district court determined that when Abeyta first spoke with the officers, they were standing outside on his doorstep. Subsequently, Abeyta either asked the officers to wait on the doorstep or simply departed during the course of the conversation to answer a ringing telephone or to go get something. Regardless of which scenario is correct, it is undisputed that once Abeyta turned his back and walked away from the door, the officers entered his home uninvited. On the basis of these facts, the district court determined that the "police officers initial entry into the house was without consent of the owner. It was without a warrant and therefore was an illegal entry at that point in time by the officers ." We agree. *See and compare U.S. v. Gonzalez,* 71 F.3d 819 (11th Cir.1996). The state's argument that the officers' conduct was the same one would expect from a "reasonably respectful citizen" ( *State v. Clark,* 124 Idaho 308, 313, 859 P.2d 344, 349 (Ct.App.1993)) is both theoretically misplaced and factually wrong. There is no reasonably respectful citizen-trespasser exception to the warrant requirement for entry into a home!

### B. Validity of Subsequent Consent

Abeyta asserts that the district court erred in determining that the officers' illegal entry was cured by his consent to their continued presence in his residence. Abeyta argues that his consent to the search of his home and the statements he made to the officers, both at his home and at the police station following a waiver of his *Miranda* rights, were involuntary products of coercion caused by the officers' illegal entry. In addition, Abeyta argues that the state failed to meet its burden of showing that his consent and statements were not induced by the officers' illegal entry or that they were "sufficiently

an act of free will to purge the primary taint."

We employ a bifurcated standard for reviewing a trial court's ruling on a motion to suppress. While we accept the trial court's findings of fact if supported by substantial evidence, "we freely review the application of constitutional principles to the facts as found." *State v. Kilby,* 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct.App.1997). More specifically, in a suppression hearing where voluntariness is an issue, " 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court.' " *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995) *(quoting State v. Kirkwood,* 111 Idaho 623, 625, 726 P.2d 735, 737 (1986)); *State v. Brennan,* 123 Idaho 553, 555, 850 P.2d 202, 204 (Ct.App.1993).

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Knapp,* 120 Idaho 343, 815 P.2d 1083 (Ct.App.1991). In such instances, the state has the burden of demonstrating by a preponderance of the evidence that the consent was voluntarily and freely given, and that the consent was not the result of duress or coercion, either direct or implied. *Schneckloth,* 412 U.S. at 248, 93 S.Ct. 2041; *State v. Whiteley,* 124 Idaho 261, 858 P.2d 800 (Ct.App.1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Id.*

After hearing testimony, the trial court determined that Abeyta voluntarily consented to the officers' further entry and continued presence in his home, as well as the subsequent search of his residence. This determination was based upon the following factual findings: (1) by inviting the officers to enter further into his residence after their initial illegal entry, Abeyta consented to the officers' presence in his home; (2) the fact that the officers locked the door behind them did not constitute a coercive circumstance because no testimony was offered to indicate

that Abeyta knew that the officers had locked the door; (3) the fact that Abeyta felt free to ask his guests to leave his residence while the officers were present clearly demonstrates that Abeyta did not feel that he was under any compulsion or that he was not a free agent to decide what he wanted to do; (4) the officers did not engage Abeyta in an accusatorial conversation but merely inquired about the stolen items; (5) the officers were not in uniform; and (6) the illegal entry was not of such an extent that it constituted a coercive circumstance that prevented Abeyta from exercising his free will in either consenting or refusing to consent to the officers' request to search or engage him in conversation.

It appears from the district court's findings that the court generally found Officer Cutler's testimony to be more credible and compelling than that of the other witnesses who testified. It was clearly within the district court's discretion to judge the credibility of the witnesses, resolve any conflicts in their testimony, weigh the evidence and draw factual inferences. We find no abuse of discretion in the district court's determination that Officer Cutler was more credible than the other witnesses who testified. However, while the district court's factual findings are supported by substantial evidence, the court's conclusion that Abeyta voluntarily consented to a search of his home warrants closer examination.

After Abeyta admitted to having the amplifier and speaker in his possession, the officers asked him to retrieve the items. When Abeyta went to retrieve the items from a closet off the kitchen, Officer Cutler followed him and noticed other items in the closet that he believed to be stolen. At this point, the officers asked Abeyta to consent to a search of his entire residence and Abeyta initially refused. Officer Cutler testified that he told Abeyta that he did not have to sign the consent form, but if he refused to do so, the officers would get a search warrant. While such a statement does not necessarily render consent involuntary, it is clearly a significant factor in determining whether consent to search was freely and voluntarily

given. *See Bumper v. North Carolina,* 391 U.S. 543, 549–50, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *State v. Kilby,* 130 Idaho 747, 750, 947 P.2d 420, 423 (Ct.App.1997).

In *Kilby, supra,* the defendant was informed following his arrest that he did not have to consent to a search of his residence, but that if he chose not to consent, the detective would have to obtain a search warrant. The defendant consented and subsequently challenged the voluntariness of his consent on appeal. This Court held that because the detective did not falsely or erroneously tell the defendant that he had a search warrant or a legitimate right to search his residence, under the totality of the circumstances, the defendant's consent was valid. Similarly, the officers in the instant matter did not *falsely* or *erroneously* state to Abeyta that they had a search warrant or a legitimate right to search his residence, only that they would get a warrant if he refused to consent. Abeyta's possession of the stolen property, coupled with Officer Cutler's observation of additional items in Abeyta's home that he believed to be stolen, provided the officers with sufficient probable cause to support a search warrant. Therefore, when the officers informed Abeyta that if he did not sign a consent form the officers would get a search warrant, the officers did not *falsely* or *erroneously* state that they had a legitimate right to search his residence.

For these reasons, under the totality of the circumstances, we agree with the district court's conclusion that Abeyta's consent to the officers' further entry and subsequent search of his residence was freely and voluntarily given, and was not the result of duress or coercion. *U.S. v. Gonzalez,* 71 F.3d at 819 (while homeowner's failure to bar deputy from following her into house was neither implied nor inferred consent, such illegal entry did not affect voluntariness of subsequent consent to search premises, especially where there was no evidence that illegal entry had any coercive effect upon homeowner). Because we find that the officers' unlawful entry was cured by Abeyta's subsequent consent, we need not address Abeyta's claim that all statements and evidence procured subsequent to the officers' illegal entry should have been suppressed as fruits of the poisonous tree.

## III.

## CONCLUSION

We affirm Abeyta's judgment of conviction.

LANSING, C.J., and BENGTSON, J., Pro Tem concur.