978 P.2d 881

STATE of Idaho, Plaintiff–Respondent,

v.

David N. STAATZ, Defendant–Appellant.

No. 24363.

Court of Appeals of Idaho.

May 26, 1999.

**694**

Hollis J. Anderson, Wallace, for appellant.

Hon. Alan G. Lance, Attorney General; Allison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Allison A. Stieglitz argued.

PERRY, Chief Judge.

David N. Staatz appeals from an order of the district court denying Staatz's motion to suppress evidence. For the reasons set forth below, we reverse.

## I.

## BACKGROUND

The undisputed facts are based on the testimony elicited during the suppression hearing. A complaint of child abuse was made to the Shoshone County Sheriff's Department. Officers Ramirez and Anderson conducted the initial investigation. The father of the alleged victim stated that he believed his daughter had been physically abused by Staatz, who was married to the child's mother, Mary. During the discussion of the complaint, the officers were informed that, two weeks previous, the father had observed marijuana plants in Staatz's bedroom closet.

Officer Ramirez contacted officer Gunderson, the head of the Shoshone County drug task force, to assist in the investigation. Officer Ramirez then contacted Mary and Staatz, outside of a local tavern, and asked that they return to their home to discuss custody arrangements for the four older children, who had already been removed from the home by the authorities and given to their father. Another child, fathered by Staatz, was at another location with a babysitter. Mary and Staatz drove home in their own vehicle.

When they arrived home, Mary and officer Ramirez went into the home. Officer Ramirez and Mary discussed the custody arrangements for her youngest child. Officer Ramirez explained to Mary how the investigation of the alleged child abuse would be carried out, stating that the officers needed to collect clothing for the youngest child and investigate the living and sleeping arrangements of the children. Mary then asked officer Ramirez to "go outside so she could think this out." Officer Ramirez, however, refused to leave for officer safety reasons because of the presence of a gun cabinet in the living room. Officer Ramirez did not ask if the cabinet was locked and did not know if it contained any weapons. During these conversations, Staatz remained outside with officer Anderson while narcotics officer Gunderson walked in and out of the house.

After the officers refused to leave, they accompanied Mary to the children's bedroom to gather clothes for the youngest child. Following a discussion wherein it was determined that the youngest child slept with her and Staatz, Mary and the officers proceeded to the master bedroom. Officer Ramirez noticed bright lights coming from the cracks around the closet door, and officer Gunderson detected an odor of marijuana. Upon questioning by officer Gunderson, Mary indicated that Staatz was growing marijuana and opened the closet door, revealing the contraband.

Staatz was charged with felony manufacturing a controlled substance in the presence

of children, misdemeanor possession of drug paraphernalia, and misdemeanor injury to children. He moved to suppress the evidence seized at the house, and the district court denied the motion. Staatz then entered into a plea agreement with the state, whereby the state agreed to amend the felony charge and to dismiss the misdemeanors. Staatz pled guilty to manufacturing a controlled substance, I.C. § 37–2732, reserving his right to appeal the district court's denial of his suppression motion. Staatz appeals.

## II.

### ANALYSIS

■ Staatz contends that the district erred both in finding that consent was given to enter the home and in finding that, if given, the consent was not thereafter revoked.[1] The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

■ Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson,* 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta,* 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct.App.1998). In such instances, the state has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby,* 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct.App.1997). The state has a heavy burden to prove that consent was given freely and voluntarily. *State v. Huskey,* 106 Idaho 91, 94, 675 P.2d 351, 354

(Ct.App.1984). The state must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Whiteley,* 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct.App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley,* 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gesture, or conduct. *State v. Knapp,* 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct.App.1991).

### A. Initial Entry

Staatz contends that the district court erred when it found that the officers' initial entry into the home was legal because Mary consented to the entry. During the hearing on the suppression motion, the only testimony addressing the method and means whereby the officers gained entry into Staatz's residence was elicited on re-direct examination of officer Ramirez:

Q. Mary let you inside her home initially—

A. Yes.

At the close of the hearing, the district court found the testimony to be "vague with respect to consent to enter the residence initially." During appellate oral argument, the state conceded the paucity of the record as it pertained to the initial entry of the residence.[2]

■ There is no direct evidence that Mary orally invited the officers into the residence or in some manner physically gestured them into the home. In this case, the state must rely on Mary's conduct to prove consent. When consent to enter and search a home must be inferred, the burden on the state of proving consent is "heaviest." *United States v. Shaibu,* 920 F.2d 1423 (9th Cir.1990). As the United States Supreme Court stated:

---

1. Staatz also argues that the child protective investigation was a pretext to allow the officers to enter the home and search for the marijuana plants. However, because of our disposition of Staatz's other allegations of error, we do not address this argument.

2. The state attributed the lack of evidence in the record regarding the initial entry into the home

on the premise that the initial entry was "not an issue" at the suppression motion. However, in the absence of a warrant to enter the home, the burden is on the state to demonstrate an exception to the warrant requirement. Thus, the circumstances surrounding the officers' entry into the home was indeed an issue at the suppression hearing.

The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." *Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

We find *Abeyta*, 131 Idaho 704, 963 P.2d 387 to be instructive on whether the state satisfied its burden of proving that the initial entry of the home was legal pursuant to Mary's consent. In *Abeyta*, two officers knocked on the door to the residence. Abeyta spoke to the officers, during which time they were outside the residence. Subsequently, Abeyta either asked the officers to wait on the doorstep or simply departed to answer a ringing telephone or to get something. Once Abeyta turned his back and walked away from the door, the officers entered his home uninvited. This Court agreed with the district court that the officers' entry into the residence was illegal.

█ Additionally, although consent is to be evaluated in light of all the circumstances, the fact that there was no evidence that Mary immediately objected to the officers' presence in her home is of no import. There was no evidence that any of the officers requested permission to enter the home. The failure to object to a police officer's entrance to a residence without the officer first requesting permission to enter suggests "submission to authority" and not implied consent. *Shaibu*, 920 F.2d at 1427.

█ The only evidence presented by the state to meet its burden was a "yes" answer to the question whether the officers were "let" into the home by Mary. This one-word answer to a question phrased in a conclusory fashion provided no evidentiary facts as to what occurred. The testimony does not disclose what the officers said to Mary or what she said to them before they entered, nor does it describe any act or gesture by Mary that might be interpreted as an expression of consent. Thus, we are constrained to hold that, as a matter of law, the evidence elicited regarding the initial entry into the residence was insufficient to satisfy the state's burden that the entry was made pursuant to the consent exception to the warrant requirement. Therefore, the officers' entry of Staatz's residence was a violation of the Fourth Amendment, and all evidence derived from the entry must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Curl*, 125 Idaho 224, 227, 869 P.2d 224, 227 (1993).

### B. Mary's Revocation

█ Staatz also contends that Mary effectively revoked any consent given to the officers which would make their initial entry into her home lawful. Even if consent has been given, expressly or impliedly, it may be revoked, thereby terminating the authority of the police to continue a warrantless search. *State v. Rusho*, 110 Idaho 556, 560, 716 P.2d 1328, 1332 (Ct.App.1986). Thus, Staatz was entitled to argue that Mary withdrew her consent. *See United States v. Jachimko*, 19 F.3d 296, 299 (7th Cir.1994). When the basis for a search is consent, the government must conform to the limitations placed upon the right granted to search. *United States v. Ward*, 576 F.2d 243, 244 (9th Cir.1978); *Mason v. Pulliam*, 557 F.2d 426, 429 (5th Cir.1977). The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness, "what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); *State v. Frizzel*, —— Idaho ——, 975 P.2d 1187 (Ct.App.1999).

█ The testimony of officer Ramirez is uncontradicted. While in the living room of the residence, officer Ramirez informed Mary that the children would be taken from her custody due to the investigation of alleged child abuse. At that point, Mary asked officer Ramirez to go "outside so she could think this out." We conclude that a typical reasonable person would have understood that Mary was specifically requesting officer Ramirez to leave her home. Thus, Mary

effectively revoked whatever consent she may have given to the officers' to initially enter her home.

The district court found that "it's not entirely clear what it [Mary's statement] was for, but the evidence shows that she only wanted him [officer Ramirez] to step out for a limited period while she thought about this, the clear implication being that he may come back in when she was through thinking about it." The reasoning that Mary's request for officer Ramirez to leave the residence somehow contained an implicit invitation to reenter after a period of time is unsupported by the record. Officer Ramirez's own testimony established that Mary neither qualified her request as to time, nor gave any indication that the officer would be invited back into the residence. Thus, we do not accept the district court's factual finding because it is clearly erroneous. *See State v. Spangler,* 130 Idaho 944, 945, 950 P.2d 1283, 1284 (Ct. App.1997).

Officer Ramirez also testified as to his reason for refusing to comply with Mary's request. Ramirez stated that there was a gun cabinet in the area of the living room. Therefore, he refused to leave the home at Mary's request because of a fear for officer safety. However, officer Ramirez testified that he didn't know what kinds of weapons, if any, were in the gun cabinet. He stated that he did not inquire whether the cabinet was locked or what it contained. The district court found that officer Ramirez advised Mary that for officer safety he would not leave the residence as she requested.

When a police officer is in a private residence solely pursuant to a resident's consent, the officer must respect a revocation of that consent. Although police practice might dictate that an individual not have unsupervised access to weapons during a time officers are on the scene of an investigation, in this case it would have been reasonable for officer Ramirez to request that Mary join him outside the residence, after explaining his concern regarding the gun cabinet. Ignoring a party's revocation of consent to be in a residence, however, is untenable. To hold otherwise would drastically curtail the ability of an individual to revoke his or her consent.

One cannot expect a resident to continue to object after his or her first request to leave has been rebuffed by the authorities. Thus, under the facts, as testified to by officer Ramirez, there remained no legitimate justification for his refusal to honor Mary's revocation of any consent to his presence within her home.

## III.

### CONCLUSION

We hold that the state's evidence was insufficient to meet its burden of proving that the initial entry into the residence was pursuant to consent. Additionally, we hold that Mary effectively revoked any purported consent when she asked officer Ramirez to leave the residence. Therefore, we reverse the order of the district court denying Staatz's motion to suppress.

Judge LANSING, CONCURS.

Judge SCHWARTZMAN, SPECIALLY CONCURRING.

I disagree with the majority's holding in Part IIA of its analysis, even assuming the initial entry was made without specific invitation. I think Mary's subsequent actions clearly implied consent to remain in the premises and discuss the situation, just as in *State v. Abeyta,* 131 Idaho 704, 963 P.2d 387 (Ct.App.1998).

However, I fully concur in Part IIB of the opinion, *i.e.* Mary's revocation, and perforce, the ultimate result to suppress the evidence seized as a consequence thereof. As the opinion cogently notes, "One cannot expect a resident to continue to object after his or her first request to leave has been rebuffed by the authorities." While the police may seek to clarify such a request, or even attempt to ask the resident to reconsider, willful indifference to, or conscious avoidance of, such a request cannot be constitutionally tolerated.