# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 44747

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2017 Opinion No. 41 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 29, 2017 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| ROSA L. GREUB, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

Order denying motion to suppress, reversed; and judgment of conviction, vacated; and case remanded.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Rosa L. Greub appeals from the district court's judgment of conviction and claims the district court erred in denying her motion to suppress. Greub argues the district court erred in holding that she did not delimit the scope of her consent to exclude her purse or, alternatively, that she revoked any previously given consent to search her purse. We agree and reverse the district court's order denying the motion to suppress, vacate the judgment of conviction, and remand the case for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The district court made the following factual findings:

Defendant Rosa L. Greub ("Defendant") was parked in a parking lot in Pocatello between 3:30 p.m. and 4:00 p.m. on June 10, 2016, when Officer Christ of the Pocatello Police Department drove into the parking lot to complete an

1

accident report. Upon entering, Officer Christ saw Defendant's car in the back corner of the parking lot and saw her stare at him in what he perceived to be a startled manner. Officer Christ parked his patrol car perpendicular to Defendant's car, either 23 feet or 15 yards away, and did not have his interior lights flashing. Officer Christ, in uniform, approached Defendant to ask her what her business was there. Defendant replied that she was on her way to work, but stopped to smoke a cigarette because her employer did not allow its employees to smoke on the premises. Officer Christ did not see a cigarette and saw that Defendant was wearing a uniform.

Officer Christ asked her [to] provide her driver's license, which she could not provide. Instead Defendant provided an identification card and confirmed that the address on it was current. Officer Christ next asked if she had "anything illegal," such as alcohol, drugs, or prescription medications, to which Defendant responded that she did not. Defendant testified at the hearing that Officer Christ persisted in asking her if she had anything illegal, and asked "If I look in your vehicle, will I find anything?" Officer Christ testified that he asked Defendant if he could search her vehicle and that Defendant said "Sure." Defendant also testified that she agreed to Officer Christ searching her car.

During this questioning, Officer Christ observed that Defendant appeared nervous because she averted her eyes from him. Officer Christ does not recall when he returned Defendant's identification to her.

After Defendant agreed to the search, Officer Christ asked Defendant to step out of the car, and he called a second unit to assist him because he was the only officer there and was not sure whether Defendant had any weapons. Defendant held her purse as she stepped out of the car, but Officer Christ told her to leave her purse in the car for safety purposes, which Defendant did. Before the second officer, Officer Buetts, arrived, Officer Christ directed Defendant to stand in front of his patrol car while he began searching the car. By the center console between the driver's seat and the passenger seat, Officer Christ saw a brown paper bag with the red cap of what he perceived to be a whiskey bottle protruding from the top. He noted that the seal had been broken.

At this time, Officer Christ stopped his search and talked with Defendant about the bottle he found in her car because he wanted backup before proceeding any further. He testified that it [was] standard procedure for a second officer to stay with the person while the other officer conducts the search for safety purposes. Because it was taking Officer Buetts an extended amount of time to arrive, Officer Christ decided to continue his search without Officer Buetts because he did not want to make Defendant late for work. Officer Christ searched behind the passenger area, then searched Defendant's purse in which he found methamphetamine. After arresting Defendant, Officer Buetts arrived and Officer Christ searched Defendant's purse a second time and found a pipe.

Thereafter, Greub was arrested for possession of a controlled substance, in violation of Idaho Code § 37-2732(c)(1). Greub filed a motion to suppress alleging her detention was unlawful, and the search of her purse violated her state and federal constitutional rights to be free from an unreasonable search and seizure. In her motion, Greub argued that when the officer

2

retained her identification card, she was seized and that the seizure was unlawful because there was no basis for the officer to suspect Greub was engaged in misconduct. Although Greub gave consent to search her car, her consent was involuntary because it was given during an illegal detention. Greub further argued that even if she had given consent, the officer had no basis to look in Greub's purse because the officer did not demonstrate he was concerned for his safety. Finally, Greub argued that even if she had voluntarily consented to a search of the car, when she got out of the car holding her purse, she revoked any consent related to the purse. And, the officer's order to leave the purse in the car so that it could subsequently be searched, violated the Idaho Supreme Court's holding in *State v. Newsom*, 132 Idaho 698, 979 P.2d 100 (1998). As a result, Greub requested any evidence derived from the search be suppressed.

The State responded to the motion to suppress. Therein, the State argued the detention was a consensual contact between Greub and the officer, Greub's consent to search the car constituted a valid exception to the warrant requirement, and that Greub needed to do something more than attempt to take her purse with her as she got out of the car in order to revoke her previously given consent. The State noted:

> [Greub] did not verbally state she was revoking consent or impliedly revoke her consent by both verbal and physical resistance by staying in her car; instead she told Officer Christ he could search her vehicle and after making that statement then exited the vehicle to allow him to conduct his search.

The State also argued that based on officer safety, the officer was justified in requiring Greub to leave the purse in the car, thereby subjecting it to a search.

The district court denied the motion to suppress, finding the initial encounter was consensual and that the original contact did not constitute a seizure. The district court further found that Greub voluntarily consented to the search of her purse because when the officer asked to search Greub's car for illegal drugs, it was reasonable for the officer to conclude that Greub consented to the search of her purse because a purse may contain drugs.

In analyzing whether Greub revoked her consent to search her purse, the district court noted no Idaho case law interprets whether a person's conduct (as opposed to statements) constitutes a revocation of consent. After reviewing cases from other jurisdictions, the district court held that Greub:

> did not tell Officer Christ of any limitations to his search of her car. Furthermore, holding onto her purse and then replacing [it] in her car was not clearly

inconsistent with her consent to the search of her car, nor was it a clear [and] unequivocal act to prevent Officer Christ from searching her purse.

The district court concluded: "Therefore, under the circumstances in this case, a reasonable person would have understood that Defendant gave general consent to Officer Christ to search her car and any containers inside of it which might contain alcohol or drugs, and that Defendant did not revoke her consent."

Greub thereafter entered a conditional plea of guilty, reserving her right to appeal the district court's denial of her motion to suppress. The district court withheld judgment and placed Greub on probation for four years. Greub timely appealed following her conviction.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Greub argues the district court erred in finding she did not delimit or revoke her consent to search her car and the containers within the car when she got out of the car with her purse. The State asserts that Greub's conduct of grabbing her purse after granting consent to search and after being instructed to step out of the car was not a clear and unequivocal revocation of her previously given consent but instead was, at best, ambiguous.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore, violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*

A warrantless search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

Although Greub contends that both constitutions were violated, she provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Grueb's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

It is well settled that when the basis for a search is consent, the state must conform its search to the limitations placed upon the right granted by the consent. *State v. Ballou*, 145 Idaho 840, 849, 186 P.3d 696, 705 (Ct. App. 2008); *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004). The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness, i.e., "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Ballou*, 145 Idaho at 849, 186 P.3d at 705. Generally, the scope of a search is defined by its expressed object. *Jimeno*, 500 U.S. at 251. In *Jimeno*, the defendant granted the officer permission to search the defendant's vehicle without any express limitation on the scope of the search. *Id.* at 250. Before the search took place, the officer informed the defendant that the officer believed the defendant was carrying narcotics and that the officer would be looking for narcotics in the vehicle. *Id.* During the search, the officer noticed a folded brown paper bag on the floorboard, picked up the bag, opened it, and found cocaine inside. Before trial, the defendant moved to suppress the cocaine found in the bag arguing that his

5

consent to search the vehicle did not extend to the closed paper bag inside of the vehicle. The trial court granted the motion to suppress, and the state appellate courts affirmed. *Id.* However, the United States Supreme Court reversed, concluding that it was objectively reasonable for the officer to conclude that the defendant's general consent to search his vehicle for narcotics included consent to search any containers within the vehicle that might contain narcotics, which was the express object of the search. *Id.* at 251-52.

Idaho has recognized that a person may have a constitutionally protected privacy interest in a purse. *Newsom*, 132 Idaho 698, 979 P.2d 100. Newsom testified she had her purse in her lap when she was asked by police to exit the vehicle. *Id.* Newsom began to get out of the vehicle while holding her purse, but an officer ordered her to leave her purse in the car. *Id.* at 699, 979 P.2d at 101. When the driver was arrested and officers searched the vehicle incident to that arrest, they also searched Newsom's purse and found methamphetamine. Newsom filed a motion to suppress, which the district court denied. *Id.* The Idaho Supreme Court reversed the district court's denial of the motion to suppress, holding that because Newsom was holding her purse at the time she was ordered out of the vehicle, her purse was entitled to as much privacy and freedom from search and seizure as the passenger herself. *Id.* at 700, 979 P.2d at 102. Since the purse was only in the vehicle because the officer ordered her to leave it there, the district court erred in finding the purse was subject to the search incident to arrest. *Id.*

Here, Greub had a privacy interest in both her car and her purse. When she consented to a search of her vehicle for "anything illegal," it was objectively reasonable for the officer to believe he could search any containers within the vehicle, including Greub's purse, which might contain alcohol or drugs. Nonetheless, consent once given may also be revoked for "inherent in the requirement that consent be voluntary is the right of the person to withdraw that consent." *State v. Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014). Thus, after a defendant has revoked consent, officers no longer may act pursuant to that initial voluntary consent. *Thorpe*, 141 Idaho at 154, 106 P.3d at 480. Of course, an individual may renew his consent after revoking it. *Id.*

The scope of consent is governed by "objective" reasonableness, *i.e.*, "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251. Idaho appellate courts have typically analyzed revocation of consent using the same test that governs whether consent was voluntary when initially granted. For

6

example, in *State v. Staatz*, 132 Idaho 693, 978 P.2d 881 (Ct. App. 1999), a wife consented to officers entering her home. *Id.* at 694, 978 P.2d 882. Thereafter, she asked the officer to go outside so she could think about the situation. *Id.* This Court concluded that a "typical reasonable person would have understood that [the wife] was specifically requesting [the officer] to leave her home." *Id.* at 696, 978 P.2d at 884. This Court then held that the wife effectively revoked whatever initial consent she may have given to the officers to enter her home. *Id.* at 697, 978 P.2d at 885.

Similarly, Thorpe gave consent for officers to search her residence. *Thorpe*, 141 Idaho at 153, 106 P.3d at 479. While the officers were searching the house, Thorpe received a call from her attorney and advised the officers that her attorney said the officers needed to stop searching if they did not have a search warrant. *Id.* This Court held that Thorpe's statements constituted a revocation of the previously given consent to search the home because a "typical reasonable person [ ] would have understood that Thorpe was asking the officers to end their search of her residence even though she was relaying instructions from her attorney and did not state that she was personally making the request." *Id.* at 154, 106 P.3d at 480.

Other jurisdictions have articulated the same standard a bit differently. Those jurisdictions also use the objectively reasonable standard but hold that in order to meet that standard, there must be unequivocal conduct, in the form of either an act, statement, or some combination of the two, that is inconsistent with the consent to the search previously given. *Burton v. United States*, 657 A.2d 741, 748 (D.C. 1994). This is because equivocal conduct is not sufficient to reasonably convey the withdrawal of the previously given consent and can be construed in many different ways and therefore, does not pass muster under an objective reasonableness test. *Id.*

Although the district court focused on whether consent could be revoked by an action as opposed to a statement, this is not an important distinction. Consent to search may be in the form of words, gestures, or conduct. *Ballou*, 145 Idaho at 846, 186 P.3d at 702. If consent can be granted by words, gestures, or conduct, then it can also be withdrawn by words, gestures, or conduct. This standard is consistent with the holdings of other jurisdictions. *See Burton*, 657 A.2d 741, 748. Thus, we hold that consent can be revoked by word, gesture, or conduct.

In this case, Greub demonstrated by clear, unequivocal conduct that she was either limiting or revoking the previously given consent to search her purse. The district court

concluded that Greub's behavior of holding onto her purse and then replacing it in the car was not clearly inconsistent with her consent to the search of her car, nor was it a clear and unequivocal act to prevent Officer Christ from searching her purse. But the district court did not distinguish between the two events.

Greub's action of attempting to remove her purse as she got out of the car was a limit to or a revocation of her previously given consent. This act clearly conveyed to the officer that while Greub consented to the search of items in the vehicle, the consent did not extend to the purse she removed from the vehicle. Removing the purse from the car necessarily excluded the purse from the scope of consent Greub had previously given because it was no longer in the car. Put differently, taking the purse *out* of the car was clearly inconsistent with her consent to search items *in* the car. A typical reasonable person would have understood that by removing her purse, Greub was either limiting or revoking her consent to search her purse.

Although Greub put her purse back in the car after the officer told her to leave it in there, acquiescence to a claim of lawful authority is not voluntary consent. *State v. Smith*, 144 Idaho 482, 488-89, 163 P.3d 1194, 1200-01 (2007). Here, the officer's order to leave the purse in the car prevented Greub from effectuating her constitutional right to limit or revoke her previously given consent. Although Greub tried to limit or revoke her consent by removing the purse from the car, the officer told her she could not do so. After her failed attempt, Greub had no choice but to follow the officer's order. As such, Greub's acquiescence to the order does not render her earlier attempt to limit or revoke her consent equivocal. Because the officer did not honor Greub's revocation of her consent to search her purse, the evidence must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

## IV.
## CONCLUSION

Greub clearly and unequivocally revoked her previously given consent as it related to the search of her purse. We reverse the district court's order denying the motion to suppress, vacate the judgment of conviction, and remand the case for proceedings consistent with this opinion.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.