**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50313**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 8, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| CHRISTOPHER MICHAEL | ) **OPINION AND SHALL NOT** |
| RICKMAN, | ) **BE CITED AS AUTHORITY** |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Judgment of conviction for trafficking in heroin, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Amy J. Lavin, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Christopher Michael Rickman appeals from a judgment of conviction for trafficking in heroin. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Rickman was driving his vehicle when he crossed the center line and had a head-on collision with another vehicle. He left the scene of the crash on foot but was returned to the area by a witness. When Rickman left, he took his backpack with him, and attempted to conceal it, but it was also returned to the scene by a witness. Police officers detained Rickman and had him sit on a nearby rock while they investigated the crash. Six or seven uniformed officers were present at the crash scene but only one to three at a time dealt with Rickman. At first, Rickman was not handcuffed but was not free to leave. When an officer questioned Rickman, he claimed he left the

scene to go to a friend's house to use his phone because his own cell phone did not have service. He admitted that he was looking at his phone to change the music immediately prior to the accident. One of the officers was concerned that Rickman was intoxicated, so the officer conducted a gaze nystagmus test which Rickman passed. Rickman asked an officer if Rickman could get a cigarette from his vehicle, but the officer offered to get one from the vehicle for Rickman. The officer then asked Rickman if he would give "consent to look in [Rickman's] vehicle for alcohol or anything like that" to which he responded, "Absolutely 100%." In the vehicle, the officer observed Rickman's cell phone and noticed that it contained "missed calls/texts notifications" and "showed that it had service." The officer then informed Rickman of his Miranda[1] rights.

Rickman admitted he was on parole. An officer asked Rickman if the officer could search the backpack. Rickman at first denied that the backpack belonged to him. The officer told Rickman that the officer was going to contact Rickman's parole officer, and Rickman then admitted the backpack was his and that it contained paraphernalia and "a little product." He told the officers, "You can search it." An officer searched the backpack and found a digital scale with residue, a small baggie, and a silicone container that had an odor an officer identified as heroin. The backpack also contained a small safe/lockbox that required a four-number combination. An officer again asked Rickman is there was "any issue" with the officers searching Rickman's vehicle and he said "no." An officer then asked a third time if Rickman was "still okay" with the search to which he "responded affirmatively." An officer searching the vehicle found a firearm and asked Rickman if he was a convicted felon. Rickman "nodded his head affirmatively." The officer then placed Rickman under arrest for being a convicted felon in possession of a firearm and handcuffed him.

An officer asked Rickman for the combination for the safe. Rickman did not immediately respond but then said he did not want to answer questions about the safe. Rickman was told that, if he changed his mind, he could inform the officer's partner. Rickman was then placed in a patrol vehicle. One of the officers contacted probation and parole to discuss authorization to search the safe, but Rickman's parole officer was not available. The officer then had the following conversation with Rickman:

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1996).

2

[Officer]:  Here to talk about the safe. I just got off the phone with the on-call Probation and Parole Agent. They are strongly advising your cooperation with us getting access to this with you willfully giving the combination. Otherwise, they are talking the possibilities of your parole getting revoked, an agent's warrant being dropped as soon as--you know--within the next--I don't know--very short term; today possibly. So, with that being said would you be willing . . .

[Rickman]:  What do you mean an Agent's warrant?

[Officer]:  So, they can drop an Agent's warrant to where you would have no eligibility to bond out. You would just stay in jail until you go through the court process and your---and then they talk about your parole. And then they talked about your parole potentially getting revoked as well. They are strongly advising your cooperation. 'Cause one way or another this [(the safe)] will get accessed. So like I said, if I can document in a report your cooperation, honesty, things like that, that stuff gets looked at in a positive light rather than me having to potentially call a judge on a Friday night to obtain a telephonic search warrant and go through motions like that. That's stuff we'll do. I don't mind doing. I'm not--like--if you're dead set and you're not gonna give me the combo that's fine. We have ways to go about it but, like I said, the on-call P&P is strongly advising your cooper--it would be in your best interest to cooperate. So, with that info would you be willing to give me the combination? . . . . Do you want to think about it for a little bit? We don't have long, but I can give you a couple minutes to think about it. Is that good? Okay.

Rickman remained handcuffed in the police vehicle. He asked for more cigarettes, which the officer provided. Approximately eighteen minutes after the officer first requested the combination, Rickman provided it without additional questioning. The safe contained methamphetamine and heroin. Rickman was charged with trafficking in heroin by possession of 7 grams or more, trafficking in methamphetamine by possession of 28 grams or more, unlawful possession of a firearm, misdemeanor possession of drug paraphernalia and being a persistent violator. After Rickman's motion to suppress was denied, he entered a conditional plea to trafficking in heroin and the other charges were dismissed. (I.C. § 37-2732B(a)(6)(B)). Rickman appeals, arguing that the district court erred in denying his motion to suppress.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

3

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* One well recognized exception to the warrant requirement is consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

On appeal, Rickman asserts that he did not lawfully consent to the searches of his vehicle or the safe. Rickman argues the officer's statements led him to believe that he was required by his parole officer to cooperate or his parole would be revoked. Rickman also argues that the officer's statements led him to believe that they had authority to conduct a warrantless search which made his consent to the searches involuntary. Rickman makes these arguments "mindful" of the Court's holdings in *State v. Peterson*, 148 Idaho 593, 595, 226 P.3d 535, 537 (2010) (holding factual

4

determinations made by trial court are not set aside on review unless clearly erroneous), and *Abeyta*, 131 Idaho at 709, 963 P.2d at 392 (holding an officer's threat of securing a search warrant does not necessarily render consent involuntary so long as no false statements regarding ability to obtain a warrant were made).

There is no indication in the record that Rickman's will was overborne or that his capacity for self-determination was critically impaired. After offering to get Rickman a cigarette from his vehicle, the officer asked Rickman, "Do you give me consent to look in your vehicle for any alcohol or anything like that?" Rickman replied, "Absolutely, 100%." After Rickman was informed of his Miranda rights, an officer asked Rickman if he had "any issue" with officers searching his vehicle. Rickman answered, "No." Rickman again gave his consent when officers were investigating the backpack. Nothing in the record supports an inference that Rickman's consent was involuntary. It was daytime and, while six or seven uniformed officers were present, only one to three officers dealt with Rickman at any time. At first, Rickman was detained and seated on an ornamental rock near the crash scene. After he was arrested, he was in a patrol vehicle. When Rickman denied the backpack belonged to him, an officer told Rickman that the officer could either search it as abandoned property or contact Rickman's parole officer to search it. Rickman then admitted ownership and gave his consent to search. The alternatives presented by the officer (treating the backpack as abandoned or contacting a parole officer) did not render Rickman's consent involuntary because the alternatives were actions the police could have legitimately taken. *See State v. Ballou*, 145 Idaho 840, 186 P.3d 696 (Ct. App. 2008); *Abeyta*, 131 Idaho 704, 963 P.2d 387. Similarly, regarding the search of the safe, there is no indication that the officer was not being truthful when he told Rickman that the on-call parole officer was strongly advising Rickman's cooperation in providing the combination or that an agent's warrant might be issued. The officer's statements regarding an agent's warrant or search warrant and "that one way or another" the safe would be accessed were not false but, instead, described the possibility of legitimate law enforcement actions if Rickman did not consent. The district court's finding that Rickman voluntarily consented to a search of his vehicle, his backpack, and his safe are supported by substantial evidence.

5

## IV.

## CONCLUSION

Because Rickman voluntarily consented to the search of his vehicle, his backpack and his safe, Rickman has not shown error in the district court's denial of his motion to suppress. Thus, Rickman's judgment of conviction for trafficking in heroin is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.