**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 44003 & 44004**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2017 Opinion No. 30 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 22, 2017 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| BENJAMIN J. DAHL, | ) | |
| aka BENJAMIN JOHN DAHL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

Order denying motion to suppress and judgments of conviction for possession of methamphetamine with intent to distribute and possession of heroin, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant. Andrea W. Reynolds argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

WALTERS, Judge Pro Tem

Benjamin J. Dahl appeals from his judgments of conviction entered upon his conditional guilty pleas to one count of possession of methamphetamine with intent to deliver, Idaho Code § 37-2732(a)(1)(A), and one count of possession of a controlled substance, heroin, I.C. § 37-2732(c)(1). Dahl argues the district court erred in denying his motion to suppress. Because the police officers had consent to search Dahl's bedroom, we uphold the district court's denial of the motion to suppress and affirm the judgments of conviction.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Two officers arrived at a home to serve a felony arrest warrant upon an individual. The subject of the arrest warrant did not live at the home, but the officers' last contact with the

1

subject was at this residence. An eight-year-old girl answered the door, and the officers asked the child if the subject of the arrest warrant was present. The child responded: "Who?" One officer then asked if Dahl was home and the child responded: "I don't know." The officer asked: "Can you go look for me?" The child closed the door and came back approximately two minutes later and said: "I think he is still sleeping." The following conversation took place:

**Officer:** Okay, is your parents up?
[inaudible]
**Officer:** Okay, can you open the door for officer safety reasons?
**Child:** Yeah.
**Officer:** We just need to talk to one adult. Can you go get one of your parents
for me, please?
**Child:** Yeah.
**Officer:** May I come in?
**Child:** Yeah.
**Officer:** Ok.

One officer entered the home with the permission of the child while the second officer remained outside. The officer stood in the entryway of the home while the child went to get one of her parents or Dahl. Approximately two minutes after the officer entered the residence, Dahl's mother came to speak with the officer. The officer asked if the subject of the arrest warrant was in the home. The mother responded: "No, he doesn't come by very often." The officer informed the mother that they had a felony arrest warrant for the subject and the officer stated:

If he is found here in this home, then people could be arrested for felony harboring. And I know that you don't want that, but, I just want to make sure that he is not here. So if [inaudible] is not here, he was here with your son, [Dahl]. Do you mind if we go up there and at least clear to make sure that he is not here?

The district court found the mother consented to the officer's request.

The mother and the officer walked up the stairs to Dahl's bedroom. The mother knocked on the door and said: "[Dahl], the police would like to see your room, please." Dahl opened his bedroom door and the following conversation took place:

**Officer:** Hey [Dahl], how are you?
**Dahl:** Good, how about you?
**Officer:** I'm not too bad. Hey man, I'm here for [the subject of the arrest
warrant]. Where is he at?
**Dahl:** [He] is not here.
**Officer:** Okay, do you mind if I look?
[inaudible]
**Officer:** Appreciate it. Who else is in here with you?

2

**Dahl:** Just my boy.
**Officer:** Where did you see [the subject of the arrest warrant] last?
**Dahl:** Um, yesterday in a [band or van].
**Officer:** In a [band or van]?
**Dahl:** Yes, sir.
**Officer:** Can I move past you real quick. I just want to check that real fast. [inaudible]
**Officer:** What have you got in there? [Dahl] can you do me a favor and come out here real quick? I've got some questions for you, man.

The officer testified that Dahl motioned for the officer to walk into the bedroom. The district court found that while searching for the subject of the arrest warrant, the officer observed in plain view a glass pipe and a white crystal substance that was neatly divided into rows laying on a large glass mirror along with multiple bundles of U.S. currency. The officer then asked Dahl to speak to him in the hallway and the officer informed Dahl of his *Miranda*[1] rights. The officer told Dahl: "the issue is that you allowed me into your room. I went into your closet back there and I found paraphernalia, which I recognized to be used for methamphetamines." The officer arrested Dahl.

The State charged Dahl with possession of a controlled substance, methamphetamine, with intent to deliver, I.C. § 37-2732(a)(1)(A), and one count of possession for each of the following controlled substances: heroin, hydrocodone, and oxycodone, I.C. § 37-2732(c)(1). Dahl filed a motion to suppress, arguing the officer violated his rights under the Fourth Amendment of the United States Constitution and Article 1, § 17 of the Idaho Constitution when the officer seized evidence without a search warrant. Dahl argued the evidence must be suppressed because the State cannot meet its burden to show that consent by a minor to enter the home was valid and there were no exigent circumstances to justify a warrantless entry into the home. The district court held a hearing on the motion to suppress. Dahl argued:

> You'll hear in the audio that it's not clear whether or not Mr. Dahl gave the officers consent when they entered his bedroom. I only point this out if it becomes relevant. I don't think it's relevant because I think the entry into the home was unlawful, and so all of this should be suppressed. But I think it's important to know that because the search of his room could be suppressed on the grounds that there was no consent for him to get into the bedroom.

The State responded:

> Judge, it's difficult for me to respond to a lot of what the defense says I think for two reasons. Number one, when I'm reading their brief, I understand it

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

to be a very simple issue. And that's why when I rephrased my issue in this case I essentially don't respond to whether this young girl had the authority to consent because the way I analyze it is even if we assume she didn't, we still have the issue of is there a nexus. My argument being there's no nexus here.

I didn't really deal with whether the homeowner had given consent or the defendant had given consent because that wasn't something that was argued in the defense brief. It was simply that this young girl couldn't have consented. So I sort of just stepped over that issue without necessarily conceding it because I really didn't think it was relevant in looking at the facts in relation to the cases that I cited.

Following the hearing, Dahl filed a notice of supplemental authority, arguing that Dahl and the mother did not give consent. The State requested the district court not consider the supplemental authority. The State argued it was prevented from calling witnesses to prove that consent was given because Dahl's motion to suppress focused only on the lawfulness of the initial entry while the notice of supplemental authority addressed the separate issue of whether Dahl and the mother gave consent to search.

The district court denied Dahl's motion to suppress. The district court held the officer's initial entry into the home based on the consent of the child was an unlawful entry because the officer should have reasonably known that an eight-year-old child did not have authority to consent to the entry. The State does not challenge that determination. The district court, however, noted that Dahl offered no testimony contradicting the officer's position that there was consent to search and concluded that both the mother and Dahl subsequently consented to the search. Because the consent by the mother and Dahl independently justified the initial warrantless search, the district court held:

> Dahl has failed to establish that but for the initial invalid entry the seizure would not have occurred. Rather, the State has shown that both [the mother] and Mr. Dahl consented to a search for [the subject of the arrest warrant]. While so searching, [the officer] discovered the contraband in plain view.

Thus, Dahl failed to meet his burden of establishing a factual nexus between the officer's initial unlawful entry and the discovery of the evidence.

Pursuant to a plea agreement, Dahl conditionally pleaded guilty to possession of methamphetamine with intent to deliver and to one count of possession of heroin, reserving his right to appeal the district court's denial of his motion to suppress. All other charges were dismissed. The district court imposed a unified eight-year sentence, with two years determinate, for possession of methamphetamine with intent to deliver, and a unified five-year sentence, with

two years determinate, for possession of heroin, to be served concurrently. The district court suspended the execution of the sentences and placed Dahl on probation for four years. Dahl timely appealed.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Although Dahl contends that both constitutions were violated, he provides no cogent reason why Article I, § 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Dahl's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

## III.

## ANALYSIS

Dahl argues the district court erred in denying his motion to suppress for two reasons: First, Dahl asserts his bedroom would not have been searched but for the officer's unlawful entry into his home, and the consent to search was not sufficiently attenuated from this unlawful entry. Second, Dahl asserts the consent to search from both Dahl and his mother was invalid.

### A. Dahl's Consent to Enter and Search the Bedroom, and the Resulting Evidence, Was Not the Direct or Indirect Result of the Unlawful Entry

Dahl argues the methamphetamine would not have been discovered but for the unlawful entry; thus, it must be suppressed. The exclusionary rule calls for suppression of evidence that is gained through unconstitutional governmental activity. *Segura v. United States*, 468 U.S. 796, 815 (1984). This prohibition against the use of derivative evidence extends to the indirect as well as the direct fruit of the government's misconduct. *Segura*, 468 U.S. at 815; *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Nevertheless, "[s]uppression is not justified unless 'the

5

challenged evidence is in some sense the product of illegal governmental activity.'" *Segura*, 468 U.S. at 815 (quoting *United States v. Crews*, 445 U.S. 463, 471 (1980)). That is, "evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence." *Id.* Where a defendant has moved to suppress evidence allegedly gained through unconstitutional police conduct, the State bears the ultimate burden of persuasion to prove that the challenged evidence is untainted, but the defendant bears an initial burden of showing a factual nexus between the illegality and the State's acquisition of the evidence. *State v. Wigginton*, 142 Idaho 180, 184, 125 P.3d 536, 540 (Ct. App. 2005). This requires a prima facie showing that the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct. *Id.* at 184, 125 P.3d at 540. By expressing the query as a "but for" test, we do not imply that a defendant bears the burden to prove a negative--that the State would not or could not have discovered the evidence on any set of hypothetical circumstances that could have arisen absent the illegal search. *State v. McBaine*, 144 Idaho 130, 134, 157 P.3d 1101, 1105 (Ct. App. 2007). Rather, the defendant need only show that, on the events that did take place, the discovery of the evidence was a product or result of the unlawful police conduct. *Id.*

Citing to *State v. Hudson*, 147 Idaho 335, 209 P.3d 196 (Ct. App. 2009), Dahl argues that because the officer's unlawful entry was ongoing at the time Dahl consented to the search of his bedroom, the officer's subsequent discovery of the incriminating evidence was contemporaneous and irrevocably intertwined with the misconduct. In *Hudson*, the officer knocked on a motel room door, and when Hudson answered the door, the officer questioned him about the marijuana odor coming from the room. *Id.* at 336, 209 P.3d at 197. Hudson attempted to close the door, but the officer prevented the door from closing with his foot. *Id.* The officer then pushed the door open and continued to observe Hudson. *Id.* A second officer arrived and Hudson granted the second officer permission to enter the motel room and later consented to a search of the room. *Id.* This Court found the first officer's unlawful search never ended because the officer prevented Hudson from restoring his privacy by closing the door; by preventing the door from closing, the officer remained in a position to observe Hudson. *Id.* at 338, 209 P.3d at 199. As such, the Court held: "because the unlawful intrusion was ongoing, the search and subsequent acquisition of the incriminating evidence was contemporaneous and irrevocably intertwined with the misconduct." *Id.*

6

Conversely, in *McBaine*, officers were investigating the report of a methamphetamine lab located inside McBaine's house. *McBaine*, 144 Idaho at 132, 157 P.3d at 1103. Officers knocked on the front door and McBaine answered. *Id.* One of the officers observed McBaine's girlfriend inside and told her that he desired to come inside and speak with her. *Id.* McBaine responded that he would rather the officers speak with his girlfriend outside. *Id.* The officer stated he preferred to speak to the girlfriend separately and then entered the house without permission from McBaine or the girlfriend. *Id.* Shortly thereafter, the officer went back outside. McBaine subsequently gave the officers consent to search his house. *Id.* The search resulted in the discovery of a methamphetamine lab. *Id.* McBaine moved to suppress the evidence and the district court denied the motion. *Id.*

On appeal, McBaine argued the discovery of the lab should have been suppressed because his consent was the product of the officer's unjustified entry into his house. *Id.* at 132-33, 157 P.3d at 1103-04. This Court examined the consequences of the unlawful entry and emphasized that the unlawful entry did not yield any incriminating information. *Id.* at 135, 157 P.3d at 1106. The officer did not search for contraband and did not act in a threatening or overbearing manner. *Id.* Further, the officer's intrusion had ended before consent to search was requested of McBaine. *Id.* Thus, the Court held McBaine failed to demonstrate a causal link between the unlawful entry by the officer and McBaine's subsequent consent to search. *Id.*

The circumstances in this case are more analogous to those in *McBaine* than *Hudson*. Unlike *Hudson*, where the officer prevented Hudson from closing the door to the motel room, the mother in this case did not attempt to end the officer's unlawful entry. Rather, the mother consented to the officer's presence in the home and escorted the officer to Dahl's bedroom. Like *McBaine*, the officer's unlawful entry did not yield any incriminating evidence, nor any evidence which would have affected Dahl's decision to grant consent to enter or search his bedroom. The officer's unlawful entry ended when Dahl's mother consented to the officer's search for the subject of the arrest warrant and escorted the officer to Dahl's bedroom.[2] At the time Dahl consented to the entry and search of his bedroom, the officer was lawfully entitled to be in the home. Moreover, the officer did not have his gun drawn and the conversation appeared non-

---

[2] We recognize Dahl's argument that because the officer did not leave the house before being allowed re-entry, the unlawful entry never ended. However, absent invalidity of his mother's consent to proceed to the bedroom, her consent ended the unlawful entry.

7

accusatory and cordial in nature. The officer testified that he asked Dahl if he could look for the subject of the arrest warrant in Dahl's bedroom and that Dahl shook his head and motioned for the officer to walk inside the bedroom. The officer did not threaten or create an overbearing environment. Therefore, we hold Dahl has failed to demonstrate that his consent to enter and search his bedroom, and the resulting evidence, was the direct or indirect result of the initial unlawful entry.

Dahl's argument on appeal focuses on the attenuation doctrine. That doctrine requires a determination of "whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." *Crews*, 445 U.S. at 471. As the United States Supreme Court has stated: "attenuation analysis is only appropriate where, as a threshold matter, courts determine that 'the challenged evidence is in some sense the product of illegal governmental activity.'" *Id.* There being no tainted evidence here, there is no occasion for application of the attenuation doctrine.

## B.     The Mother and Dahl Consented to a Search of Dahl's Bedroom

Dahl argues the State did not meet its burden of establishing, by a preponderance of the evidence, the validity of Dahl's consent because Dahl did not voluntarily consent to the search. Dahl also asserts the State did not meet its burden of establishing that the mother had actual or apparent authority to consent to a search of Dahl's bedroom. The State argues Dahl did not preserve for appeal his challenge to the voluntariness of his and his mother's consent because he failed to raise the issue below. Alternatively, the State contends even if the issue is preserved, the record supports the district court's conclusion that Dahl and his mother consented to the entry and search and that such consent was voluntary.

### 1.     The State established by a preponderance of evidence that the mother and Dahl consented to a search

Dahl argues the State did not meet its burden of establishing, by a preponderance of the evidence, that Dahl and his mother consented to a search.

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747,

8

749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993).

In this case, the officer was granted entry into the home by a child. When the mother came to speak with the officer, the officer asked: "Do you mind if we go up there and at least clear to make sure he is not here?" The mother responded: "Yeah," which gave the officer permission to search for the suspected felon. The mother escorted the officer to Dahl's bedroom and facilitated the officer's interaction with Dahl by knocking on Dahl's bedroom door, stating: "[Dahl], the police would like to see your room, please. . . . They just want to make sure [the subject of the arrest warrant] isn't here." When Dahl opened the bedroom door, the officer asked if he could look in the bedroom for the subject of the arrest warrant. The officer testified that Dahl shook his head and motioned for the officer to walk inside the bedroom.

The district court determined: "The evidence before the Court shows that [the mother and Dahl] consented to the Officer's search." In a footnote, the district court indicated "[t]he defense did not offer testimony from either the defendant or his mother that contradicts the State's position that both Dahl's [sic] gave the Officer's [sic] consent to search for [the subject of the arrest warrant]." Thus, the district court's finding that the mother and Dahl consented to the search is supported by the evidence.

### 2. The issue of whether consent was voluntary is not preserved for appeal

The threshold issue is whether Dahl preserved for appeal the argument that even if Dahl and his mother consented to the search of his bedroom, that consent was not voluntary. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Johnson*, 148 Idaho 664, 670, 227 P.3d 918, 924 (2010). Issues not raised below generally may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). For an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated or the basis of the objection must be apparent from the context. *State v. Sheahan*, 139 Idaho 267, 277, 77 P.3d 956, 966 (2003).

Although Dahl preserved for appeal the general issue that Dahl and his mother did not consent to the search of the bedroom, he cannot argue more grounds for that challenge than were asserted before the district court. *See State v. Armstrong*, 158 Idaho 364, 368, 347 P.3d 1025, 1029 (Ct. App. 2015) (constitutional arguments not raised before lower courts are not preserved

for appellate review). Even when a defendant mentions the general basis for a motion to suppress, his or her arguments on appeal are limited by what was argued to the trial court. *See State v. Anderson*, 154 Idaho 703, 705-06, 302 P.3d 328, 330-331 (2012) (declining to address the issue of a drug dog's reliability raised for the first time on appeal when only the issue of whether probable cause to search one area of the vehicle after the drug dog had previously alerted to another area was challenged below). Moreover, although more frequently cited for evidentiary questions, an objection on one ground will not preserve for appeal a separate and different basis for objection not raised before the trial court. *State v. Higgins*, 122 Idaho 590, 597, 836 P.2d 536, 543 (1992).

Dahl's argument on appeal--that any consent was not voluntary--was not raised before the district court, thereby depriving the district court of an opportunity to address the argument in the first instance and to rule accordingly. In Dahl's motion to suppress, he only raised the issue of whether the child's consent to the officer entering the home was valid. Dahl argued: "In this case, the Officers were given consent to enter the home by 8-year old [child]. The question before this Court is whether such consent is valid." At the suppression hearing, Dahl raised the issue of whether the child's consent was valid and whether Dahl and his mother consented to the search. Regarding whether the child's consent was valid, Dahl argued: "And so I think the consent by the young girl I think that's invalid, which makes it unlawful, and that's inextricably intertwined with the officer's search of Mr. Dahl's room." Regarding the mother's consent, Dahl argued that: "There's no clear consent from [the mother] for [the officer] to be in the home." Finally, regarding Dahl's consent, Dahl argued:

> You'll hear in the audio that it's not clear whether or not Mr. Dahl gave the officers consent when they entered his bedroom. I only point this out if it becomes relevant. I don't think it's relevant because I think the entry into the home was unlawful, and so all of this should be suppressed. But I think it's important to know that because the search of his room could be suppressed on the grounds that there was no consent for him to get into the bedroom.

In his notice of supplemental authorities, Dahl asserted: "Based upon evidence adduced at the hearing, [the mother] did not give explicit consent for the officers to come in or remain in her home." She acquiesced in allowing the officers to go upstairs to [Dahl's] bedroom. Additionally, Dahl argued: "It is also not clear whether Mr. Dahl granted consent to search his home based upon the evidence adduced at the hearing." Thus, Dahl's arguments in his motion to

suppress, at the suppression hearing, and in his notice of supplemental authorities focused on the issue of whether Dahl and his mother gave consent; not whether such consent was voluntary.

On appeal, however, Dahl's issue heading reads: "Even If The Consent Given By Mr. Dahl And/Or His Mother Was Sufficiently Attenuated From The Illegal Entry, The State Did Not Meet Its Burden Of Establishing By A Preponderance Of The Evidence The Validity Of That Consent." Dahl asserts: "With respect to Mr. Dahl, it appears from the record that, at most, Mr. Dahl acquiesced to the search of his bedroom, but did not voluntarily consent to it." Dahl's arguments to the district court and on appeal are different. To argue in district court that there was no consent does not fairly include an argument on appeal that even if there was consent, that consent was not voluntary. The district court's factual findings and holding are limited to whether there was an unlawful entry and whether there was a factual nexus between the unlawful entry and the discovery of the evidence. The district court determined: "Dahl has failed to establish that but for the initial invalid entry the seizure would not have occurred. Rather, the State has shown that both [the mother] and Mr. Dahl consented to a search for [the subject of the arrest warrant]." The district court's holding is limited to whether the mother and Dahl consented to the search; as the district court was never asked to and consequently did not rule on whether such consent was voluntary. Dahl may not claim the district court's decision was in error based on an argument that was never presented to the district court for consideration. *See Armstrong*, 158 Idaho at 368, 347 P.3d at 1029. Appellate courts are forums of review, not for a factual determination in the first instance. Because Dahl did not raise the voluntariness of his consent as an issue before the district court, it is not preserved for appeal.[3]

---

[3] As noted above, the district court's finding that consent was given by Dahl and his mother is supported by the evidence in the record. Dahl's argument regarding the validity of his consent is not a claim of whether such consent was invalid, but rather whether his conduct amounted to consent or was merely acquiescence. In that regard, Dahl's conduct amounted to consent and was therefore valid. As to his mother's consent, Dahl argues it was invalid due to the coercive atmosphere in which his mother consented, given the time of day, the officer already present in the entryway, the fact that his mother was woken up, and that she was in her bathrobe. Dahl did not present an argument below that his mother's consent was involuntary due to those circumstances. Even so, to the extent the district court's finding of valid consent encompasses or considers these factors, it remains supported by the law and evidence.

## IV.

## CONCLUSION

Dahl has failed to demonstrate that his consent to enter and search his bedroom, and the resulting evidence, was the direct or indirect result of the initial unlawful entry. The State established, by a preponderance of evidence, that Dahl and his mother consented to a search. The issue of whether such consent was voluntary is not preserved for appeal. We affirm the district court's denial of Dahl's motion to suppress and the judgments of conviction.

Chief Judge GRATTON and Judge MELANSON **CONCUR**.