**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50212**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: January 7, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| JESSIE KIM MITCHELL, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Judgment of conviction for misdemeanor possession of a controlled substance and possession of drug paraphernalia, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Emily M. Joyce, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

TRIBE, Judge

Jessie Kim Mitchell appeals from his judgment of conviction for misdemeanor possession of a controlled substance and possession of drug paraphernalia. Mitchell argues the district court erred by denying his motion to suppress evidence obtained during a warrantless search. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In July 2021, at approximately 2:00 p.m., several law enforcement officers, including Sergeant Hay; Corporal Wiersma; Officer Watt; and Corporal Kent, responded to a report of a juvenile ingesting illicit substances with Jerry Bunce. The report alleged that Bunce kept drugs and paraphernalia in a carved wooden cigar box. The officers arrived at Bunce's last known reported location--Mitchell's residence. Bunce met the officers outside the residence on the covered porch. During their conversation, Sergeant Hay heard a noise and asked if Mitchell was

1

inside the residence.  Bunce confirmed that Mitchell was inside.  When Sergeant Hay knocked on the door and called for Mitchell, Bunce positioned himself between the door and the officer.  Bunce then opened the door, wide enough to stick his head in the crack, and called for Mitchell.  Sergeant Hay also called for Mitchell.  Mitchell then came to the door.  Sergeant Hay asked Mitchell if they could speak inside the residence, outside of Bunce's presence.  Mitchell did not allow Sergeant Hay to enter his residence but agreed to talk to the officers outside.

Mitchell exited the residence leaving the front door open.  Sergeant Hay followed Mitchell to the area outside the porch and instructed Bunce to stay outside with the remaining officers.  Corporal Kent and two other officers remained with Bunce.  At all times during the interaction with the officers, Bunce blocked the entrance to either the residence or to the covered porch area with his arms folded at the chest and hands tucked in.

After a few minutes, Sergeant Hay returned and told Bunce that Mitchell corroborated information regarding the illicit substances Bunce used with the juvenile.  Sergeant Hay then specifically asked Bunce where the cigar box with methamphetamine was.  In response, Bunce lifted his hand from under his armpit and pointed with his right hand over his left shoulder toward the door and then lowered his hand to his shoulder,[1] sighed, turned around and entered the residence.  Sergeant Hay and Corporal Wiersma followed Bunce inside.  In the living room, Bunce picked up the cigar box, opened it, and handed it to Sergeant Hay.  Sergeant Hay identified a methamphetamine pipe inside the box.  Sergeant Hay asked Bunce if there were more illegal substances in the residence and if they belonged to Mitchell.  Bunce denied any more drugs in the residence belonged to him but stated that he did not know if Mitchell had any drugs in the residence.[2]

---

[1]     Mitchell asserts that Bunce simply scratched his shoulder, while the State argues that Bunce pointed over his shoulder toward the entrance of the residence.  The district court made a factual determination, based on the submitted briefing, testimony and other documentation, that this gesture was an "indication toward the doorway to the home."  Essential to this finding is that the district court found the officers' recitation of events more credible, as is the district court's prerogative.  *See State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

[2]     The district court found that Bunce said "no" when asked if Mitchell did drugs.  However, the on-body video shows that Bunce said he had "no idea."

Sergeant Hay and Officer Watt walked out of the residence to speak to Mitchell. Sergeant Hay told Mitchell about the methamphetamine pipe and asked Mitchell about his drug use. Mitchell admitted to previously smoking marijuana and stated he had marijuana and a pipe inside the residence. Sergeant Hay said that, because he found drugs inside the residence, he could dispatch a canine unit to search the residence but it would be easier if Mitchell could walk officers inside and voluntarily turn over the contraband. After a short follow-up conversation, Mitchell walked inside the residence, and Sergeant Hay followed. Ultimately, Sergeant Hay located marijuana, methamphetamine, a marijuana pipe, and an electronic scale in various locations throughout the residence.

The State charged Mitchell with felony possession of a controlled substance, misdemeanor possession of a controlled substance, misdemeanor possession of paraphernalia, and a persistent violator sentencing enhancement. Mitchell filed a motion to suppress, arguing that the officers failed to obtain consent to enter the residence and that, even if they did, such consent was not voluntary. The State argued that a reasonable officer would have interpreted Bunce's nonverbal conduct as implied consent. The State further argued that the exigent circumstances exception to the warrant requirement applied because officers had a concern that evidence may be destroyed if not immediately confiscated. At the hearing on the motion to suppress, the district court heard Sergeant Hay's and Corporal Wiersma's testimony and watched two on-body videos. The district court denied the motion, holding that no exigent circumstances existed to justify the warrantless entry into Mitchell's residence but that Mitchell and Bunce both voluntarily consented to the entry.

Pursuant to a plea agreement, Mitchell entered conditional guilty pleas to misdemeanor possession of a controlled substance (Idaho Code § 37-2732(c)(3)) and misdemeanor possession of paraphernalia (I.C. § 37-2734A(1)), reserving his right to appeal the district court's denial of his suppression motion. The State dismissed the remaining charge and the sentencing enhancement. The district court stayed the execution of the sentence, pending an appeal of the suppression issue. Mitchell appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Mitchell argues that the district court erred in denying his motion to suppress because substantial and competent evidence does not support a finding that officers obtained voluntary consent prior to searching his residence. Specifically, Mitchell argues that the district court erroneously determined that Bunce impliedly consented to the search by considering only his actions after officers entered the residence. Mitchell further argues that the district court failed to consider and make factual findings that support its finding that Mitchell's consent for Sergeant Hay's second entry into the residence was voluntary. The State argues that Mitchell failed to show that the district court erroneously denied Mitchell's motion to suppress.

### A.    Bunce's Implied Consent

Mitchell argues there was no substantial and competent evidence to support the district court's finding that Bunce impliedly consented to entry into his residence. Mitchell argues that Sergeant Hay relied on the actions Bunce took after the officers entered the residence for the basis of the alleged consent.

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 708, 963 P.2d 387, 391 (Ct. App. 1998). The existence, voluntariness, and scope of a consent to search is a question of fact to be determined from the totality of the circumstances. *See*

4

*Schneckloth v. Bustamonte*, 412 U.S. 218, 227-234 (1973). The State carries the burden to demonstrate consent by a preponderance of the evidence. *State v. Dahl*, 162 Idaho 541, 548, 400 P.3d 629, 636 (Ct. App. 2017). Absent a warrant or exigent circumstances, officers must obtain consent prior to crossing the threshold of a residence. *Payton v. New York*, 445 U.S. 573, 590 (1980). While consent to search must be unequivocal, it can be expressed through words, gestures, or other conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991).

Mitchell relies on *State v. Maxim*, 165 Idaho 901, 454 P.3d 543 (2019) as support for his argument. However, the facts in *Maxim* are distinguishable. In *Maxim*, officers entered a probationer's apartment while investigating reported drug activity, but they did not learn of his probation status or the Fourth Amendment waiver he signed until after they detained him. *Id.* at 903, 454 P.3d at 545. The Idaho Supreme Court found the officer's conduct unconstitutional because entering the apartment could not be made reasonable retroactively through the subsequent discovery of a probation associated Fourth Amendment waiver. *Id.* at 908, 454 P.3d at 550. Here, the district court found that Sergeant Hay interpreted Bunce's gestures and conduct outside the residence and prior to entering the residence as consent. Consequently, the underlying issue for this Court is whether Bunce's nonverbal conduct before officers entered Mitchell's residence constituted implied consent.

Implied consent exists when, under the totality of circumstances, a reasonable officer would believe a person consented to the entry. *State v. Mangum*, 153 Idaho 705, 715, 291 P.3d 44, 54 (Ct. App. 2012). Courts employ an objective reasonableness standard to determine the existence and scope of an individual's consent. *State v. Rios*, 160 Idaho 262, 265, 317 P.3d 316, 319 (2016). The nonverbal conduct interpreted as implied consent must clearly express an individual's unequivocal, specific, free and intelligent consent, in the absence of duress or coercion. *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011); *see State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). Moreover, implied consent cannot arise from mere acquiescence to a claim of lawful authority. *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990); *see State v. Moran-Soto*, 150 Idaho 175, 180, 244 P.3d 1261, 1266 (Ct. App. 2010). By extension, to examine whether a reasonable officer would interpret nonverbal conduct as valid consent for entry, the court should consider all relevant circumstances that give meaning and context to the encounter.

This Court has not directly addressed what factors are indicative of implied consent; however, we have held that nonverbal conduct may be probative of voluntary consent and can satisfy consent to search. Where in response to an officer's request to enter his room, the occupant shook his head and gestured to the officer to enter, this Court held that the district court properly found consent to search the room. *Dahl,* 162 Idaho at 548, 400 P.3d at 636. This Court has also held that a third-party consented to a search of a wallet by handing it to the officer for inspection without any request to do so. *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002).

Federal courts have also considered specific factors under the totality of the circumstances to determine whether officers had implied consent. If an officer requests permission to enter a residence, a court is more likely to find consent when coupled with an individual's nonverbal conduct, such as a failure to object. *See, e.g.*, *Shaibu*, 920 F.2d at 1427 (no implied consent found where an individual opened a door, failed to object to entry, and officers did not indicate desire to enter residence); *United States v. Jones*, 701 F.3d 1300, 1321 (10th Cir. 2012) (implied consent found where an officer indicated his desire to search a residence, and an individual walked toward the residence and unlocked back door with the officer behind him); *United States v. Little*, 431 F. App'x 417, 420 (6th Cir. 2011) (no implied consent found where an officer did not request permission to enter even though the homeowner knew the officer and did not object to entry).

Another factor that federal courts consider in determining whether a party impliedly consented to an entry is the individual's understanding that he or she was not free to enter the residence in question without an officer. *See, e.g.*, *Harney v. City of Chicago*, 702 F.3d 916, 926 (7th Cir. 2012) (implied consent found where, prior to entering the residence, officers told an individual he was under arrest); *United States v. Castellanos*, 518 F.3d 965, 970 (8th Cir. 2008) (implied consent to enter home found where intoxicated person was taken to the residence by officers to retrieve identification); *United States v. Coulter*, 461 F. App'x 763, 767 (10th Cir. 2012) (implied consent found where a homeowner entered the residence after officer advised homeowner she could not enter the residence alone for officer safety reasons and homeowner did not object to the entry).

Finally, federal courts have found certain gestures by their very nature will provide clear evidence of consent. *See, e.g.*, *United States v. Lewis*, 476 F.3d 369, 381 (5th Cir. 2007) (implied

6

consent to enter a hotel room found where an occupant gestured at officers to come in); *United States v. Winston*, 444 F.3d 115, 122 (1st Cir. 2006) (implied consent found where, in response to an agent's question as to the location of the nightstand, an individual motioned to the object with his shoulder); *United States v. White*, 508 F. App'x 837, 841 (10th Cir. 2013) (implied consent found where a homeowner responded to the officers' question about the location of the subject of an investigation by taking them into the residence).

With these factors in mind, we consider the district court's ruling. The district court determined that Bunce's conduct throughout the interaction, under the totality of the circumstances, would be interpreted by a reasonable officer as implied consent. As Sergeant Hay was stepping off the porch and Bunce attempted to go inside the residence, the Sergeant specifically instructed Bunce to stay outside the residence with the other officers. Similar to *Coulter*, the officer here expressly instructed Bunce not to enter the residence and to remain with the other officers; therefore, it is reasonable to infer that Bunce understood he could not enter the residence without law enforcement accompanying him. *See Coulter*, 461 F. App'x at 767. Sergeant Hay testified that he interpreted Bunce's nonverbal conduct--gesturing toward the residence, turning around and entering the residence, leaving the door open, and failing to object to the officers' entry--as consent to enter. Corporal Wiersma testified he saw Bunce point over his shoulder toward the residence. Like in *Dahl*, a reasonable officer could interpret Bunce's series of nonverbal actions in response to a question about a location of an item as consent to enter. *See Dahl*, 162 Idaho at 548, 400 P.3d at 636. Just as in *Winston*, here it is reasonable for the officers to interpret Bunce's gesture and retreating to the residence in response to a question regarding contraband, as a gesture inviting them to enter. *See Winston*, 444 F.3d at 122.

Mitchell argues that, because the officers never expressly requested to enter the residence, Bunce's actions could not be interpreted as affirmative consent but as submission to authority. In support of this argument, Mitchell relies on *State v. Kapelle*, 158 Idaho 121, 344 P.3d 901 (Ct. App. 2014). In *Kapelle*, this Court affirmed the district court's finding of consent when officers responded to Kapelle's residence to investigate the potential harboring of a fugitive. *Id.* at 128, 344 P.3d at 908. During the suppression hearing, the officers provided contradictory testimony regarding the manner in which Kapelle agreed to their entrance into the residence. *Id.* at 129, 344 P.3d at 909. One officer believed Kapelle said "okay"; the other testified that Kapelle nodded his

head in the affirmative. *Id.* Regardless, the officers were adamant that Kapelle agreed to their entrance, walked into the residence, left the front door open, and allowed officers to follow. *Id.* Despite the contradictory testimony from the officers, this Court held that competent and substantial evidence supported the district court's finding that Kapelle consented. *Id.*

Similarly, the officers here did not expressly request to search Mitchell's residence. Sergeant Hay explained the purpose of his investigation was to look for a cigar box. Similar to *Kapelle,* Bunce did not verbally respond to Sergeant Hay's question. Instead, Bunce uncrossed his arms, pointed toward the residence, abandoned his position at the entrance to the residence, moved inside the residence, and left the front door open for the officers to enter. Unlike *Kapelle*, the officers here did not give contradictory testimony regarding Bunce's method of consent. Therefore, considering the context in Bunce's encounter with Sergeant Hay, the facts in *Kapelle* support the district court's findings.

Mitchell also references this Court's decision in *State v. Staatz*, 132 Idaho 693, 978 P.2d 881 (Ct. App. 1999). In *Staatz*, this Court held the evidence was insufficient to support the district court's finding that the third-party consented to the officer's entry into a residence. *Id.* at 696, 978 P.2d at 884. However, the factual background in *Staatz* is distinguishable. In *Staatz*, there was no evidence that the third-party expressly or impliedly invited officers to enter her residence. *Id.* The record was devoid of any verbal or nonverbal indication of consent by the third-party. *Id.* Ultimately, this Court held that there was no competent and substantial evidence to support the district court's finding of consent. *Id.* at 697, 978 P.2d at 885. Conversely, the record here includes conversations between Bunce and several officers. The record also includes a description by two officers of Bunce's gesture pointing over his shoulder that Sergeant Hay interpreted as consent to enter. Indeed, the district court determined that Bunce's gestures, body language, and nonverbal conduct could be reasonably interpreted as consent.

Mitchell has failed to meet his burden to show that the district court erred in finding that Bunce impliedly consented to the officers' entry into Mitchell's residence.

**B.** **Mitchell's Consent**

Mitchell also argues that his consent for the officers to enter his residence was involuntary. Mitchell argues that Sergeant Hay's threat that he could dispatch a canine to search the residence was coercion. Mitchell argues that, while the district court failed to make findings regarding that

8

statement, this Court is permitted to make findings with the identical evidence in the record. The State argues that this Court cannot make any factual findings as this Court does not have the identical evidence that the district court had because the district court relied, in part, on testimony. The State then argues that Mitchell failed to preserve the voluntariness issue for appeal. Finally, the State argues that, even if this issue is preserved for appeal, the district court's factual findings support that Mitchell voluntarily consented to Sergeant Hay's entry into Mitchell's residence.

### 1.    Identical evidence

As an initial matter, we address Mitchell's argument that, because this Court has identical evidence as the district court, we should freely review the evidence in the record. The State argues that a live hearing and a transcript are not identical--the former allows more accurate credibility determinations. We agree.

Contrary to Mitchell's assertion that a transcript is the same as a live hearing, the Idaho Supreme Court has held that appellate review is constrained from making credibility determinations through transcripts alone. *See State v. Maahs*, 171 Idaho 738, 744, 525 P.3d 1131, 1137 (2023). The district court hears the testimony and sees the witnesses. *Id.* Thus, we have an inferior vantage point with respect to credibility determinations, and we will not supplant the district court's live observations with our reading of a transcript. Thus, we decline to make factual findings and apply the usual standard of review--whether the district court's findings were supported by substantial and competent evidence.

### 2.    Preservation

Next, we address the State's argument that Mitchell failed to preserve the voluntariness of consent issue on appeal. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). The fundamental purpose of issue preservation is to ensure that the district court ruled on an issue before an appellate court will address it. *See*, *e.g. State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010). Thus, an exception to the preservation rule has been applied by this Court when the issue was argued to or decided by the trial court. *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *see State v. Miramontes*, 170 Idaho 920, 924-25, 517 P.3d 849, 853-54 (2022) (holding that a "party preserves an issue for appeal by properly presenting the issue with

9

argument and authority to the trial court below and noticing it for hearing *or . . .* if the trial court issues an adverse ruling").

We disagree with the State's argument that Mitchell's failure to argue voluntariness of his consent to the district court precludes this argument on appeal. The district court addressed the voluntariness of Mitchell's consent as an inextricable part of the voluntary consent analysis. The district court stated: "Mitchell appeared calm and conversational. His demeanor was not agitated." The district court also did not find any facts that would suggest Sergeant Hay withheld Mitchell's identification and concluded that his consent was voluntary. Since the issue was directly addressed by the district court, it is preserved on appeal. That said, this Court will consider the issue of voluntariness only to the extent addressed by the district court. Mitchell now includes additional arguments that were not argued to or considered by the district court. Specifically, Mitchell asserts that he was coerced into consenting to search when Sergeant Hay threatened to dispatch a trained canine to find illegal substances in the residence. We agree that "it would be 'inappropriate for this Court to rule that the district court erred by not considering *evidence or argument* not presented to it.'" *Hall v. State*, 172 Idaho 334, 352, 533 P.3d 243, 261 (2023) (quoting *State v. Gonzalez*, 165 Idaho 95, 100, 439 P.3d 1267, 1272 (2019)). Therefore, we will address voluntariness to the extent that it was addressed by the district court--Mitchell's demeanor and conduct, the officers' failure to retain Mitchell's identification, and the lack of any evidence that suggests coerciveness.

### 3.    Voluntariness

Mitchell argues that the district court failed to support its finding that Mitchell voluntarily consented to entry into his residence with substantial and competent evidence.[3] The question is whether his consent was voluntary.

The voluntariness of one's consent is a factual finding based on reasonable inferences that will not be disturbed on appeal unless clearly erroneous. *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006). We evaluate consent under the totality of the circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003). Voluntary consent is characterized as "the product of an essentially free and unconstrained choice" but is not dependent "on the presence

---

[3]    Notably, there is no dispute that Mitchell gave actual consent and that he had authority to do so.

10

or absence of a single controlling criterion." *Schneckloth*, 412 U.S. at 225-26. In making such determinations, we assess potentially coercive police questions and the possibly vulnerable subjective state of the individual from whom consent is elicited. *State v. Garcia*, 143 Idaho 774, 778, 152 P.3d 645, 649 (Ct. App. 2006). Voluntariness weighs several nonexclusive factors such as the number of officers involved, the location and conditions of consent, whether the individual was free to leave, whether the individual knew of his or her right to refuse to consent, and whether the police retained the individual's identification. *Schneckloth*, 412 U.S. at 248-49; *Garcia*, 143 Idaho at 778, 152 P.3d at 649; *Jaborra*, 143 Idaho at 97, 137 P.3d at 484. Although the presence of multiple police officers does not establish coercion by itself and there is no requirement that the police inform the individual that he or she is free to leave or has a right to refuse consent, these factors are nevertheless relevant when viewing the totality of the circumstances. *Jaborra*, 143 Idaho at 97, 137 P.3d at 484.

Here, the district court found that Mitchell's encounter with the officers appeared to be congenial, nonthreatening, and cooperative. Mitchell does not contend that the officers withheld his identification until he was permitted access to the residence or that the officers attempted to deceive or trick him, imposed a threat by their physical presence, or touched Mitchell in a threatening manner. In fact, Mitchell's conduct demonstrated his willingness and ability to deny entry by initially refusing entry to Sergeant Hay. Accordingly, the district court did not err in finding that Mitchell was not coerced into providing consent and his consent was voluntary. The district court did not err in denying Mitchell's motion to suppress.

Even if Mitchell preserved the coercion by procuring a canine argument, substantial and competent evidence does not support that Mitchell's consent was coerced. Mitchell argues that Sergeant Hay's specific threat to use a canine to search the residence for drugs amounted to coercion. Mitchell contends that Sergeant Hay could not have entered his residence with the canine without first obtaining a warrant. Mitchell agrees that Sergeant Hay had sufficient information to obtain a search warrant, yet he argues that (without making this specific representation to Mitchell) the Sergeant's threat to obtain a trained canine was baseless and indicative of coercion. We disagree.

This Court has held that, under the totality of circumstances, consent is more likely to be found involuntary if contaminated by an officer's false or erroneous statements regarding the

11

ability to obtain a warrant or another legitimate right to search a residence. *Kapelle*, 158 Idaho at 129, 344 P.3d at 909; *Abeyta*, 131 Idaho at 708-709, 963 P.2d at 391-92. If officers have probable cause to obtain a warrant, telling a suspect that they will obtain a warrant if consent is refused does not vitiate the suspect's consent to search. *State v. Ballou*, 145 Idaho 840, 848, 186 P.3d 696, 704 (Ct. App. 2008). A police officer cannot use a sensory-enhancing device (such as a drug-detection canine) that is not in general public use to search a residence without a warrant or exigent circumstance. *See Florida v. Jardines*, 569 U.S. 1, 8-9 (2013); *Brigham City v. Stuart*, 547 U.S. 398, 403-404 (2006).

Mitchell concedes that, at the time Sergeant Hay mentioned the possibility of bringing in a canine to assist with the search of his residence, there was probable cause for a warrant to search the residence for additional illegal substances. Mitchell's concession is well-founded. The Idaho Supreme Court has ruled that probable cause to obtain a search warrant exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Howard*, 135 Idaho 727, 730, 24 P.3d 44, 47 (2001). A search warrant would, in turn, enable Sergeant Hay to use a drug-detecting canine to assist with locating any illegal substances within the residence. Thus, Sergeant Hay was not misrepresenting his ability to dispatch a drug-detecting canine when he spoke to Mitchell inside the residence. Competent and substantial evidence supports the district court's finding that Mitchell's consent for the officers' entry into his residence was voluntary.

## IV.

## CONCLUSION

Mitchell did not meet his burden to show that the district court erred in denying his motion to suppress. The district court did not err in finding that Bunce impliedly consented to the officers' initial entry into Mitchell's residence. Further, the district court did not err in finding that Mitchell voluntarily consented to Sergeant Hay's second entry into his residence. Therefore, the judgment of conviction is affirmed.

Judge HUSKEY and Judge LORELLO, **CONCUR**.